MORGAN, LEWIS & BOCKIUS LLP
Lisa Weddle, Bar No. 259050
lisa.weddle@morganlewis.com
Brian Hom, Bar No. 240055
brian.hom@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel: +1.213.612.2500
Fax: +1.213.612.2501

MORGAN, LEWIS & BOCKIUS LLP
Molly Moriarty Lane, State Bar No. 149206
molly.lane@morganlewis.com
Garrick Y. Chan, Bar No. 315739
garrick.chan@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel: +1.415.442.1000
Fax: +1.415.442.1001

Attorneys for Defendant,
BMW OF NORTH AMERICA, LLC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FREDERICK J. JUROSKY,<br><br>Plaintiff,<br><br>vs.<br><br>BMW OF NORTH AMERICA, LLC; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. 3:19-cv-00706-JM-BGS<br><br>Judges: District Judge Jeffrey T. Miller and Magistrate Judge Bernard G. Skomal<br><br>**DEFENDANT BMW OF NORTH AMERICA, LLC'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY FEES, COSTS AND EXPENSES**<br><br>*[Filed concurrently with Opposition; Declaration of Garrick Y. Chan; Objection to Request for Judicial Notice; Objection to the Declaration of Jacob Cutler; Objection to the Declaration of Michael H. Rosenstein; Objection to the Declaration of Dara Tabesh; and Objection to the Declaration of Payam Shahian]*<br><br>**Date:** **June 8, 2020**<br>**Time:** **10:00 a.m.**<br>**Dept.:** **5D** |

Pursuant to Rule 201 of the Federal Rules of Evidence, Defendant BMW of North America, LLC ("BMW NA") respectfully requests that this Court take judicial notice of the following:

1. Attached hereto as **Exhibit A** are true and correct copies of the complaints from: *McDonald v. BMW NA*, San Diego Superior Court, Case Number 37-2017-00025907-CU-BC-CTL; *Yi v. BMW NA*, Central District of California, Case Number 2:17-cv-06467-SVW-SK; and *Broadhag v. BMW NA*, Los Angeles Superior Court, Case Number BC677890.

2. Attached hereto as **Exhibit B** is a true and correct copy of the Declaration of Erin Melody-Rosenfield in Support of SLP Plaintiffs' Opposition to Kia Motors America, Inc.'s Petition for Coordination in *Darmohray v. Kia Motors America, Inc.* (Santa Clara County Case Number 19CV329904).

3. Attached hereto as **Exhibit C** is a true and correct copy of the court's Tentative Ruling On Motion for Attorneys' Fees, Costs and Expenses in *Allen v. Jaguar Land Rover*, San Diego Superior Court, Hon. Timothy Taylor presiding, Case Number 37-2017-00042273-CU-BC-CTL.

4. Attached hereto as **Exhibit D** is a true and correct copy of the court's Order on SLP's Motion for Fees in *Mikhaeilpoor v. BMW NA*, Superior Court of Los Angeles, Hon. Randolph Hammock presiding, Case Number BC611197.

5. Attached hereto as **Exhibit E** is a true and correct copy of the Court of Appeal of the State of California, Second Appellate District, Division One's order regarding SLP's appeal from the trial court's order as to Plaintiff's attorneys fees in *Mikhaeilpoor v. BMW NA*, Case No. B293987.

///

///

///

A court may take judicial notice of matters of public record if the facts are not subject to a reasonable dispute. Fed. R. Evid. 201. Court orders and filings are proper subject of judicial notice. See, e.g., *Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings).

Dated: May 22, 2020

MORGAN, LEWIS & BOCKIUS LLP
Molly Moriarty Lane
Lisa Weddle
Brian Hom
Garrick Y. Chan

By /s/ Garrick Y. Chan
Garrick Y. Chan
Attorneys for Defendant,
BMW OF NORTH AMERICA, LLC

EXHIBIT A
TO REQUEST FOR JUDICIAL NOTICE

COPY

Benjeman Beck (SBN 268617)
e-mail: bbeck@slpattorney.com
Anna Lisa Knafo (SBN 245182)
e-mail: aknafo@slpattorney.com
STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 Century Park East, Suite 430
Los Angeles, CA 90067
Telephone: (310) 929-4900
Facsimile: (310) 943-3838

Attorneys for Plaintiff KURT BROADHAG

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT 03 2017

Sherri R. Carter, Executive Officer/Clerk
By: Glorietta Robinson, Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES – UNLIMITED JURISDICTION**

| | |
|---|---|
| KURT BROADHAG,<br><br>Plaintiff,<br><br>vs.<br><br>BMW OF NORTH AMERICA, LLC; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case Nos.: BC 677890<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES CA 90067

Plaintiff alleges as follows:

## PARTIES

1. As used in this Complaint, the term "Plaintiff" shall refer to Plaintiff KURT BROADHAG.

2. Plaintiff is a resident of Los Angeles County, California.

3. As used in this Complaint, the term "Defendants" shall refer collectively to all Defendants named in this Complaint, while the term "Defendant BMW NA" shall refer to Defendant BMW of North America, LLC only.

4. Defendant BMW of North America, LLC is a limited liability company organized and in existence under the laws of the State of Delaware and registered with the California Department of Corporations to conduct business in California. At all times relevant herein, Defendant was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in Los Angeles County.

5. Plaintiff is ignorant of the true names and capacities of the Defendants sued under the fictitious names DOES 1 to 10. They are sued pursuant to Code of Civil Procedure section 474. When Plaintiff becomes aware of the true names and capacities of the Defendants sued as DOES 1 to 10, Plaintiff will amend this Complaint to state their true names and capacities.

## TOLLING OF THE STATUTES OF LIMITATIONS

6. To the extent there are any statutes of limitation applicable to Plaintiff's claims—including, without limitation, his express warranty and implied warranty—the running of the limitation periods have been tolled by equitable tolling, the discovery rule, fraudulent concealment rule, repair rule, and/or equitable estoppel.

///

///

///

///

**FIRST CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANTS**

**VIOLATION OF SUBDIVISION (D) OF CIVIL CODE SECTION 1793.2**

7. On or about June 2, 20110, Plaintiff purchased a 2011 BMW 550i vehicle identification number WBAFR9C56BC271025, (hereafter "Vehicle") which was manufactured and/or distributed by Defendants. The Vehicle was purchased and/or primarily used for personal, family, or household purposes. Plaintiff purchased the Vehicle from a person or entity engaged in the business of manufacturing, distributing, or selling consumer goods at retail.

8. In connection with the purchase, Plaintiff received an express written warranty in which Defendants undertook to preserve or maintain the utility or performance of the Vehicle or to provide compensation if there is a failure in utility or performance for a specified period of time. The warranty provided, in relevant part, that in the event a defect developed with the Vehicle during the warranty period, Plaintiff could deliver the Vehicle for repair services to Defendants' representative and the Vehicle would be repaired.

9. During the warranty period, the Vehicle contained and/or developed defects, including but not limited to, defects causing excessive oil consumption; defects necessitating excessive oil top-offs in between regular oil services; defects causing oil leaks; defects causing the Vehicle to burn engine oil; defects causing an oil loss error message, defects causing a burnt oil smell, defects causing the illumination of the "low oil" light; defects causing low oil levels; defects causing the crank case and/or its components to crack; defects with the hydraulic pump; defects causing a burnt coolant smell; defects causing coolant leaks, defects causing the drivetrain malfunction error message to come on; defects causing the Vehicle to emit white smoke; defects causing the vehicle to shake badly while operating; defects causing misfires in the cylinders; defects related to the pressure pump; defects causing low pressure; defects related to the fuel supply line; defects causing the fuel injectors to leak; defects causing the fuel injectors to become fouled; defects causing the spark plugs to become fouled with fuel; defects causing a strong smell of fuel; defects related to the Vehicle's

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

engine; defects related to misfiring in cylinders; defects related to faulty fuel injectors; defects related to faulty coils; defects related to faulty spark plugs; defects causing the Vehicle to run rough and/or sound rough; defects causing abnormal noises; defects causing vibrations when accelerating; defects related to the Vehicle's cooling system; defects causing the coolant expansion tank and cap to leak; defects causing the coolant return line to leak; and all other defects as shown in the Vehicle repair history. Said defects substantially impair the use, value, or safety of the Vehicle.

10. Defendants and their representatives in this state have been unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of opportunities. Despite this fact, Defendants failed to promptly replace the Vehicle or make restitution to Plaintiff as required by Civil Code section 1793.2, subdivision (d) and Civil Code section 1793.1, subdivision (a)(2).

11. Plaintiff has been damaged by Defendants' failure to comply with its obligations pursuant to Civil Code section 1793.2, subdivision (d) and Civil Code section 1793.1, subdivision (a)(2), and therefore brings this cause of action pursuant to Civil Code section 1794.

12. Plaintiff suffered damages in a sum to be proven at trial in an amount that exceeds $25,000.00.

13. Defendants' failure to comply with its obligations under Civil Code section 1793.2, subdivision (d) was willful, in that Defendants and their representative were aware that they were unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of repair attempts, yet Defendants failed and refused to promptly replace the Vehicle or make restitution. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (c).

14. Defendants do not maintain a qualified third-party dispute resolution process which substantially complies with Civil Code section 1793.22. Accordingly, Plaintiff is

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (e).

15. Plaintiff seeks civil penalties pursuant to section 1794, subdivisions (c), and (e) in the alternative and does not seek to cumulate civil penalties, as provided in Civil Code section 1794, subdivision (f).

**SECOND CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANTS**

**VIOLATION OF SUBDIVISION (B) OF CIVIL CODE SECTION 1793.2**

16. Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

17. Although Plaintiff presented the Vehicle to Defendants' representative in this state, Defendants and their representative failed to commence the service or repairs within a reasonable time and failed to service or repair the Vehicle so as to conform to the applicable warranties within 30 days, in violation of Civil Code section 1793.2, subdivision (b). Plaintiff did not extend the time for completion of repairs beyond the 30-day requirement.

18. Plaintiff has been damaged by Defendants' failure to comply with its obligations pursuant to Civil Code section 1793.2(b), and therefore brings this Cause of Action pursuant to Civil Code section 1794.

19. Plaintiff has rightfully rejected and/or justifiably revoked acceptance of the Vehicle, and has exercised a right to cancel the purchase. By serving this Complaint, Plaintiff does so again. Accordingly, Plaintiff seeks the remedies provided in California Civil Code section 1794(b)(1), including the entire contract price. In the alternative, Plaintiff seeks the remedies set forth in California Civil Code section 1794(b)(2), including the diminution in value of the Vehicle resulting from its defects. Plaintiff believes that, at the present time, the Vehicle's value is *de minimis*.

20. Defendants' failure to comply with their obligations under Civil Code section 1793.2(b) was willful, in that Defendants and their representative were aware that they were obligated to service or repair the Vehicle to conform to the applicable express warranties

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

within 30 days, yet they failed to do so. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794(c).

**THIRD CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANTS**

**VIOLATION OF SUBDIVISION (A)(3) OF CIVIL CODE SECTION 1793.2**

21. Plaintiff incorporates by reference the allegations contained in paragraphs set forth above.

22. In violation of Civil Code section 1793.2, subdivision (a)(3), Defendants failed to make available to its authorized service and repair facilities sufficient service literature and replacement parts to effect repairs during the express warranty period. Plaintiff has been damaged by Defendants' failure to comply with its obligations pursuant to Civil Code section 1793.2(a)(3), and therefore brings this Cause of Action pursuant to Civil Code section 1794.

23. Defendants' failure to comply with its obligations under Civil Code section 1793.2, subdivision (a)(3) was wilful, in that Defendants knew of its obligation to provide literature and replacement parts sufficient to allow its repair facilities to effect repairs during the warranty period, yet Defendants failed to take any action to correct its failure to comply with the law. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages; pursuant to Civil Code section 1794(c).

**FOURTH CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANTS**

**BREACH OF EXPRESS WRITTEN WARRANTY**

**(CIV. CODE, § 1791.2, SUBD. (a); § 1794)**

24. Plaintiff incorporates by reference the allegations contained in paragraphs set forth above.

25. In accordance with Defendants' warranty, Plaintiff delivered the Vehicle to Defendants' representative in this state to perform warranty repairs. Plaintiff did so within a reasonable time. Each time Plaintiff delivered the Vehicle, Plaintiff notified Defendants and

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

their representative of the characteristics of the Defects. However, the representative failed to repair the Vehicle, breaching the terms of the written warranty on each occasion.

26. Plaintiff has been damaged by Defendants' failure to comply with its obligations under the express warranty, and therefore brings this Cause of Action pursuant to Civil Code section 1794.

27. Defendants' failure to comply with its obligations under the express warranty was willful, in that Defendants and their authorized representative were aware that they were obligated to repair the Defects, but they intentionally refused to do so. Accordingly, Plaintiff is entitled to a civil penalty of two times of Plaintiff's actual damages pursuant to Civil Code section 1794(c).

**FIFTH CAUSE OF ACTION**

**BY PLAINTIFF AGAINST ALL DEFENDANTS**

**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

**(CIV. CODE, § 1791.1; § 1794)**

28. Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

29. Pursuant to Civil Code section 1792, the sale of the Vehicle was accompanied by Defendants' implied warranty of merchantability. Pursuant to Civil Code section 1791.1, the duration of the implied warranty is coextensive in duration with the duration of the express written warranty provided by Defendants, except that the duration is not to exceed one-year.

30. Pursuant to Civil Code section 1791.1 (a), the implied warranty of merchantability means and includes that the Vehicle will comply with each of the following requirements: (1) The Vehicle will pass without objection in the trade under the contract description; (2) The Vehicle is fit for the ordinary purposes for which such goods are used; (3) The Vehicle is adequately contained, packaged, and labelled; (4) The Vehicle will conform to the promises or affirmations of fact made on the container or label.

31. At the time of purchase, or within one-year thereafter, the Vehicle contained or developed the defects set forth above. The existence of each of these defects constitutes a

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

breach of the implied warranty because the Vehicle (1) does not pass without objection in the trade under the contract description, (2) is not fit for the ordinary purposes for which such goods are used, (3) is not adequately contained, packaged, and labelled, and (4) does not conform to the promises or affirmations of fact made on the container or label.

32. Plaintiff has been damaged by Defendants' failure to comply with its obligations under the implied warranty, and therefore brings this Cause of Action pursuant to Civil Code section 1794.

## SIXTH CAUSE OF ACTION

## BY PLAINTIFF AGAINST DEFENDANT BMW OF NORTH AMERICA, LLC ONLY

## (Fraud)

33. Plaintiff's sixth cause of action applies only as to Defendant BMW NA.

34. Plaintiff purchased the Vehicle as manufactured with Defendant BMW NA's V-8, turbocharged engine, which BMW and enthusiasts refer to as the "N63."

35. Defendant BMW NA committed fraud by allowing the Vehicle to be sold to Plaintiff without disclosing that the Vehicle and its N63 engine was defective and susceptible to sudden and premature failure.

36. In particular, Plaintiff is informed, believe, and thereon alleges that prior to Plaintiff acquiring the Vehicle, BMW NA was well aware and knew that the N63 engine installed on the Vehicle was defective but failed to disclose this fact to Plaintiff at the time of sale and thereafter.[1]

37. Specifically, BMW NA knew (or should have known) that the twin-turbo charged engine had one or more defects that causes the subject vehicle to be unable to properly utilize the engine oil and, in fact, to improperly burn off and/or consume abnormally high amounts of oil (the "Oil Consumption Defect"). The Oil Consumption Defect decreases the lubrication available to engine parts, which results in premature failure. As a consequence, the

---

[1] Indeed, Defendant has issued various internal technical bulletins to its dealers (not consumers) concerning the Engine Defect.



STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

Oil Consumption Defect requires unreasonably frequent oil changes and/or the addition of oil between scheduled oil changes.[2]

38. The Oil Consumption Defect is a safety concern because it prevents the engine from maintaining the proper level of engine oil, and causes voluminous oil consumption that cannot be reasonably anticipated or predicted. Therefore, the Oil Consumption Defect is unreasonably dangerous because it can cause engine failure while the subject vehicle is in operation at any time and under any driving conditions or speeds, thereby exposing the subject vehicle's driver, passengers, and others who share the road with them, to serious risk of accidents and injury.

39. Plaintiff is informed, believes and thereon alleges that Defendant BMW NA acquired its knowledge of the Oil Consumption Defect prior to the time when Plaintiff acquired the Vehicle, though sources not available to consumers such as Plaintiff, including but not limited to pre-production and post-production testing data, early consumer complaints about the engine defect made directly to BMW NA and its network of dealers, aggregate warranty data compiled from BMW NA's network of dealers, testing conducted by BMW NA in response to these complaints, as well as warranty repair and parts replacement data received by BMW NA from BMW NA's network of dealers, amongst other sources of internal information.

40. Plaintiff is informed, believe, and thereon alleges that while Defendant BMW NA knew about the Engine Defect, and its safety risks since mid-2008, if not before, BMW NA nevertheless concealed and failed to disclose the defective nature of the Vehicle and its N63 engine to Plaintiff at the time of sale and thereafter. Had Plaintiff known that the Vehicle suffered from the Oil Consumption Defect, he would not have purchased the Vehicle.

41. Indeed, Plaintiff alleges that prior to the sale of the Vehicle to Plaintiff, Defendant BMW NA knew that the Vehicle and its N63 engine suffered from an inherent defect, was defective, would fail prematurely, and was not suitable for its intended use.

---

[2] The Oil Consumption Defect was particularly apparent in a recent Consumer Reports study on excessive oil consumption. Consumer Reports studied 498,900 vehicles across several makes and models for complaints about engine oil consumption and concluded BMW's twin turbocharged engine was included on four out of the five most defective vehicles.





STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

42. Defendant BMW NA was under a duty to Plaintiffs to disclose the defective nature of the Vehicle and its N63 engine, its safety consequences and/or the associated repair costs because:

a. Defendant BMW NA acquired its knowledge of the Oil Consumption Defect and its potential consequences prior to Plaintiff acquiring the Vehicle, through sources not available to consumers such as Plaintiff, including but not limited to pre-production and post-production testing data, early consumer complaints about the Oil Consumption Defect made directly to BMW NA and its network of dealers, aggregate warranty data compiled from BMW NA's network of dealers, testing conducted by BMW NA in response to these complaints, as well as warranty repair and part replacements data received by BMW NA from its network of dealers, amongst other sources of internal information;

b. Defendant BMW NA was in a superior position from various internal sources to know (or should have known) the true state of facts about the material defects contained in vehicles equipped with N63 engine; and

c. Plaintiff could not reasonably have been expected to learn or discover of the Vehicle's Oil Consumption Defect and its potential consequences until well after Plaintiff purchased the Vehicle.

43. In failing to disclose the defects in the Vehicle's N63 engine, Defendant BMW NA knowingly and intentionally concealed material facts and breached its duty not to do so.

44. The facts concealed or not disclosed by Defendant BMW NA to Plaintiff is material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Vehicle. Had Plaintiff known that the Vehicle and its N63 engine were defective at the time of sale, he would not have purchased the Vehicle.

45. Plaintiff is a reasonable consumer who does not expect his engine to fail and not work properly. Plaintiff further expects and assumes that Defendant BMW NA will not sell or lease vehicles with known material defects, including but not limited to those involving the

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

vehicle's N63 engine and will disclose any such defect to its consumers before selling such vehicles.

46. As a result of Defendant BMW NA's misconduct, Plaintiff has suffered and will continue to suffer actual damages.

**PRAYER**

PLAINTIFF PRAYS for judgment against Defendant as follows:

a. For Plaintiff's actual damages in an amount according to proof;

b. For restitution;

c. For a civil penalty in the amount of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (c) or (e);

d. For any consequential and incidental damages;

e. For costs of the suit and Plaintiff's reasonable attorneys' fees pursuant to Civil Code section 1794, subdivision (d);

f. For punitive damages;

g. For prejudgment interest at the legal rate; and

h. For such other relief as the Court may deem proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action asserted herein.

Dated: October 03, 2017

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION

BY: [signature]
Anna Lisa Knafo
Attorneys for Plaintiff KURT BROADHAG

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

Christine Haw (SBN 289651)
e-mail: chaw@slpattorney.com
Yoon Kim (SBN 292650)
e-mail: ykim@slpattorney.com
STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 Century Park East, Suite 430
Los Angeles, CA 90067
Telephone: (310) 929-4900
Facsimile: (310) 943-3838

Attorneys for Plaintiff IAN MCDONALD

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**07/14/2017** at 03:02:05 PM
Clerk of the Superior Court
By Laura Melles,Deputy Clerk

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO – UNLIMITED JURISDICTION**

| | |
|---|---|
| IAN MCDONALD,<br><br>Plaintiff,<br><br>vs.<br><br>BMW OF NORTH AMERICA, LLC; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case Nos.: 37-2017-00025907-CU-BC-CTL<br><br>Hon.<br>Dept.:<br><br>**COMPLAINT FOR VIOLATION OF STATUTORY OBLIGATIONS**<br><br>JURY TRIAL DEMANDED |

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

Plaintiff alleges as follows:

## PARTIES

1. As used in this Complaint, the word "Plaintiff" shall refer to Plaintiff IAN MCDONALD.

2. Plaintiff is a resident of San Diego County, California.

3. Defendant BMW of North America, LLC ("Defendant" or "BMW NA") is a limited liability company organized and in existence under the laws of the State of Delaware and registered with the California Department of Corporations to conduct business in California. At all times relevant herein, Defendant was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in Santa Clara County.

4. Plaintiff is ignorant of the true names and capacities of the Defendants sued under the fictitious names DOES 1 to 10. They are sued pursuant to Code of Civil Procedure section 474. When Plaintiff becomes aware of the true names and capacities of the Defendant sued as DOES 1 to 10, Plaintiff will amend this Complaint to state their true names and capacities.

## TOLLING OF THE STATUTES OF LIMITATIONS

5. To the extent there are any statutes of limitation applicable to Plaintiff's claims—including, without limitation, his express warranty and implied warranty—the running of the limitation periods have been tolled by equitable tolling, class action tolling (including, nut not limited to, the *Bang v. BMW of North America, LLC* (Case No. 2:15-CV-6945) Complaint, filed September 18, 2015, and First Amended Complaint, filed December 21, 2015, (attached hereto as Exhibit A), the discovery rule, fraudulent concealment rule, repair rule, and/or equitable estoppel.

//

//

//

//

**FIRST CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT**

**VIOLATION OF SUBDIVISION (D) OF CIVIL CODE SECTION 1793.2**

6. In or around July 2011, Plaintiff purchased a 2012 BMW 650I vehicle identification number WBALZ3C50CDL71259, (hereafter "Vehicle") which was manufactured and or distributed by Defendant. The Vehicle was purchased or used primarily for personal, family, or household purposes. Plaintiff purchased the Vehicle from a person or entity engaged in the business of manufacturing, distributing, or selling consumer goods at retail.

7. In connection with the purchase, Plaintiff received an express written warranty in which Defendant undertook to preserve or maintain the utility or performance of the Vehicle or to provide compensation if there is a failure in utility or performance for a specified period of time. The warranty provided, in relevant part, that in the event a defect developed with the Vehicle during the warranty period, Plaintiff could deliver the Vehicle for repair services to Defendant's representative and the Vehicle would be repaired.

8. During the warranty period, the Vehicle contained or developed defects, including but not limited to, defects causing excessive oil consumption; defects related to the Vehicle's engine; defects causing the Vehicle to be stuck in park; the Vehicle not starting; motor being seized; engine seized internally; defects necessitating of excessive top-ups/top-offs of oil between oil-change services; defects causing the premature failure of the engine, oil coolers, short engine, oil pipe, ISA screws, profile gaskets, exhaust manifolds, cylinder heads, hex nuts with flanges, o-rings, gasket rings, screw clams, engine oil coolers, oil cooling pipe inlets, oil cooling pipe outlets, cleaner, and hose clamps; defects necessitating the premature replacement of the the engine, oil coolers, short engine, oil pipe, ISA screws, profile gaskets, exhaust manifolds, cylinder heads, hex nuts with flanges, o-rings, gasket rings, screw clams, engine oil coolers, oil cooling pipe inlets, oil cooling pipe outlets, cleaner, hose clamps, battery, injectors, PCV tubes, intake gaskets, vacuum pump, low PSI fuel line with sensor, hot-film air mass, gaskets, clams, connecting lines, vent pipes, and high pressure fuel pumps;

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

and/or defects related to and all other defects as shown in the Vehicle repair history. Said defects substantially impair the use, value, or safety of the Vehicle.

9. Defendant and its representatives in this state have been unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of opportunities. Despite this fact, Defendant failed to promptly replace the Vehicle or make restitution to Plaintiff as required by Civil Code section 1793.2, subdivision (d) and Civil Code section 1793.1, subdivision (a)(2).

10. Plaintiff has been damaged by Defendant's failure to comply with its obligations pursuant to Civil Code section 1793.2, subdivision (d) and Civil Code section 1793.1, subdivision (a)(2), and therefore brings this cause of action pursuant to Civil Code section 1794.

11. Plaintiff suffered damages in a sum to be proven at trial in an amount that exceeds $25,000.00.

12. Defendant's failure to comply with its obligations under Civil Code section 1793.2, subdivision (d) was willful, in that Defendant and its representative were aware that they were unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of repair attempts, yet Defendant failed and refused to promptly replace the Vehicle or make restitution. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (c).

13. Defendant does not maintain a qualified third-party dispute resolution process which substantially complies with Civil Code section 1793.22. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (e).

14. Plaintiff seeks civil penalties pursuant to section 1794, subdivisions (c), and (e) in the alternative and does not seek to cumulate civil penalties, as provided in Civil Code section 1794, subdivision (f).

//

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

**SECOND CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT**

**VIOLATION OF SUBDIVISION (B) OF CIVIL CODE SECTION 1793.2**

15. Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

16. Although Plaintiff presented the Vehicle to Defendant's representative in this state, Defendant and its representative failed to commence the service or repairs within a reasonable time and failed to service or repair the Vehicle so as to conform to the applicable warranties within 30 days, in violation of Civil Code section 1793.2, subdivision (b). Plaintiff did not extend the time for completion of repairs beyond the 30-day requirement.

17. Plaintiff has been damaged by Defendant's failure to comply with its obligations pursuant to Civil Code section 1793.2(b), and therefore brings this Cause of Action pursuant to Civil Code section 1794.

18. Plaintiff has rightfully rejected and/or justifiably revoked acceptance of the Vehicle, and has exercised a right to cancel the purchase. By serving this Complaint, Plaintiff does so again. Accordingly, Plaintiff seeks the remedies provided in California Civil Code section 1794(b)(1), including the entire contract price. In the alternative, Plaintiff seeks the remedies set forth in California Civil Code section 1794(b)(2), including the diminution in value of the Vehicle resulting from its defects. Plaintiff believes that, at the present time, the Vehicle's value is *de minimis*.

19. Defendant's failure to comply with their obligations under Civil Code section 1793.2(b) was willful, in that Defendant and its representative were aware that they were obligated to service or repair the Vehicle to conform to the applicable express warranties within 30 days, yet they failed to do so. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794(c).

//

//

//

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

**THIRD CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT**

**VIOLATION OF SUBDIVISION (A)(3) OF CIVIL CODE SECTION 1793.2**

20. Plaintiff incorporates by reference the allegations contained in paragraphs set forth above.

21. In violation of Civil Code section 1793.2, subdivision (a)(3), Defendant failed to make available to its authorized service and repair facilities sufficient service literature and replacement parts to effect repairs during the express warranty period. Plaintiff has been damaged by Defendant's failure to comply with its obligations pursuant to Civil Code section 1793.2(a)(3), and therefore brings this Cause of Action pursuant to Civil Code section 1794.

22. Defendant's failure to comply with its obligations under Civil Code section 1793.2, subdivision (a)(3) was wilful, in that Defendant knew of its obligation to provide literature and replacement parts sufficient to allow its repair facilities to effect repairs during the warranty period, yet Defendant failed to take any action to correct its failure to comply with the law. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages; pursuant to Civil Code section 1794(c).

**FOURTH CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT**

**BREACH OF EXPRESS WRITTEN WARRANTY**

**(CIV. CODE, § 1791.2, SUBD. (a); § 1794)**

23. Plaintiff incorporates by reference the allegations contained in paragraphs set forth above.

24. In accordance with Defendant's warranty, Plaintiff delivered the Vehicle to Defendant's representative in this state to perform warranty repairs. Plaintiff did so within a reasonable time. Each time Plaintiff delivered the Vehicle, Plaintiff notified Defendant and its representative of the characteristics of the Defects. However, the representative failed to repair the Vehicle, breaching the terms of the written warranty on each occasion.

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

25. Plaintiff has been damaged by Defendant's failure to comply with its obligations under the express warranty, and therefore brings this Cause of Action pursuant to Civil Code section 1794.

26. Defendant's failure to comply with its obligations under the express warranty was willful, in that Defendant and their authorized representative were aware that they were obligated to repair the Defects, but they intentionally refused to do so. Accordingly, Plaintiff is entitled to a civil penalty of two times of Plaintiff's actual damages pursuant to Civil Code section 1794(c).

**FIFTH CAUSE OF ACTION**

**BY PLAINTIFF AGAINST ALL DEFENDANTS**

**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

**(CIV. CODE, § 1791.1; § 1794)**

27. Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

28. Pursuant to Civil Code section 1792, the sale of the Vehicle was accompanied by Defendant's implied warranty of merchantability. Pursuant to Civil Code section 1791.1, the duration of the implied warranty is coextensive in duration with the duration of the express written warranty provided by Defendant, except that the duration is not to exceed one-year.

29. Pursuant to Civil Code section 1791.1 (a), the implied warranty of merchantability means and includes that the Vehicle will comply with each of the following requirements: (1) The Vehicle will pass without objection in the trade under the contract description; (2) The Vehicle is fit for the ordinary purposes for which such goods are used; (3) The Vehicle is adequately contained, packaged, and labelled; (4) The Vehicle will conform to the promises or affirmations of fact made on the container or label.

30. At the time of purchase, or within one-year thereafter, the Vehicle contained or developed the defects set forth above. The existence of each of these defects constitutes a breach of the implied warranty because the Vehicle (1) does not pass without objection in the trade under the contract description, (2) is not fit for the ordinary purposes for which such

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

goods are used, (3) is not adequately contained, packaged, and labelled, and (4) does not conform to the promises or affirmations of fact made on the container or label.

31. Plaintiff has been damaged by Defendant's failure to comply with its obligations under the implied warranty, and therefore brings this Cause of Action pursuant to Civil Code section 1794.

**SIXTH CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT**

**FRAUD**

32. Plaintiff purchased the Vehicle as manufactured with Defendant BMW NA's V-8, twin-turbocharged engine, which BMW and enthusiasts refer to as the "N63."

33. Defendant BMW NA committed fraud by allowing the Vehicle to be sold to Plaintiff without disclosing that the Vehicle and its N63 engine was defective and susceptible to sudden and premature failure.

34. In particular, Plaintiff is informed, believe, and thereon alleges that prior to Plaintiff acquiring the Vehicle, BMW NA was well aware and knew that the N63 engine installed on the Vehicle was defective but failed to disclose this fact to Plaintiff at the time of sale and thereafter.[1]

35. Specifically, BMW NA knew (or should have known) that the twin-turbo charged engine had one or more defects that causes the subject vehicle to be unable to properly utilize the engine oil and, in fact, to improperly burn off and/or consume abnormally high amounts of oil (the "Oil Consumption Defect"). The Oil Consumption Defect decreases the lubrication available to engine parts, which results in premature failure. As a consequence, the Oil Consumption Defect requires unreasonably frequent oil changes and/or the addition of oil between scheduled oil changes.[2]

---

[1] Indeed, Defendant has issued various internal technical bulletins to its dealers (not consumers) concerning the Engine Defect.

[2] The Oil Consumption Defect was particularly apparent in a recent Consumer Reports study on excessive oil consumption. Consumer Reports studied 498,900 vehicles across several makes and models for complaints about engine oil consumption and concluded BMW's twin turbocharged engine was included on four out of the five most defective vehicles.

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

36. The Oil Consumption Defect is a safety concern because it prevents the engine from maintaining the proper level of engine oil, and causes voluminous oil consumption that cannot be reasonably anticipated or predicted. Therefore, the Oil Consumption Defect is unreasonably dangerous because it can cause engine failure while the subject vehicle is in operation at any time and under any driving conditions or speeds, thereby exposing the subject vehicle's driver, passengers, and others who share the road with them, to serious risk of accidents and injury.

37. Plaintiff is informed, believes and thereon alleges that Defendant BMW NA acquired its knowledge of the Oil Consumption Defect prior to Plaintiff acquiring the Vehicle, though sources not available to consumers such as Plaintiff, including but not limited to pre-production and post-production testing data, early consumer complaints about the engine defect made directly to BMW NA and its network of dealers, aggregate warranty data compiled from BMW NA's network of dealers, testing conducted by BMW NA in response to these complaints, as well as warranty repair and parts replacement data received by BMW NA from BMW NA's network of dealers, amongst other sources of internal information.

38. Plaintiff is informed, believe, and thereon alleges that while Defendant BMW NA knew about the Engine Defect, and its safety risks since mid-2011, if not before, BMW NA nevertheless concealed and failed to disclose the defective nature of the Vehicle and its N63 engine to Plaintiff at the time of sale and thereafter. Had Plaintiff known that the Vehicle suffered from the Oil Consumption Defect, he would not have purchased the Vehicle.

39. Indeed, Plaintiff alleges that prior to the sale of the Vehicle to Plaintiff, Defendant BMW NA knew that the Vehicle and its N63 engine suffered from an inherent defect, was defective, would fail prematurely, and was not suitable for its intended use.

40. Defendant BMW NA was under a duty to Plaintiffs to disclose the defective nature of the Vehicle and its N63 engine, its safety consequences and/or the associated repair costs because:

a. Defendant BMW NA acquired its knowledge of the Oil Consumption Defect and its potential consequences prior to Plaintiff acquiring the Vehicle,

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

through sources not available to consumers such as Plaintiff, including but not limited to pre-production and post-production testing data, early consumer complaints about the Oil Consumption Defect made directly to BMW NA and its network of dealers, aggregate warranty data compiled from BMW NA's network of dealers, testing conducted by BMW NA in response to these complaints, as well as warranty repair and part replacements data received by BMW NA from its network of dealers, amongst other sources of internal information;

b. Defendant BMW NA was in a superior position from various internal sources to know (or should have known) the true state of facts about the material defects contained in vehicles equipped with N63 engine; and

c. Plaintiff could not reasonably have been expected to learn or discover of the Vehicle's Oil Consumption Defect and its potential consequences until well after Plaintiff purchased the Vehicle.

41. In failing to disclose the defects in the Vehicle's N63 engine, Defendant BMW NA has knowingly and intentionally concealed material facts and breached its duty not to do so.

42. The facts concealed or not disclosed by Defendant BMW NA to Plaintiff is material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Vehicle. Had Plaintiff known that the Vehicle and its N63 engine were defective at the time of sale, he would not have purchased the Vehicle.

43. Plaintiff is a reasonable consumer who does not expect his engine to fail and not work properly. Plaintiff further expects and assumes that Defendant BMW NA will not sell or lease vehicles with known material defects, including but not limited to those involving the vehicle's N63 engine and will disclose any such defect to its consumers before selling such vehicles.

44. As a result of Defendant BMW NA's misconduct, Plaintiff has suffered and will continue to suffer actual damages.

//

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

**SEVENTH CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT**

**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

45. Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

46. Plaintiff is a "consumer" as defined in the Magnuson-Moss Warranty Act (referred to as "Mag-Moss"), 15 U.S.C. § 2301(3).

47. Defendant is a "supplier" and "warrantor" as defined in the Mag-Moss Act, 15 U.S.C. § 2301(4), 15 U.S.C. § 2301(5).

48. The Vehicle is a "consumer product" as defined in the Mag-Moss Act, 15 U.S.C. § 2301(1).

49. In addition to the express warranty, in connection with the sale of the Vehicle to Plaintiff, an implied warranty of merchantability was created under California law. The Vehicle's implied warranties were not disclaimed using a Buyer's Guide displayed on the Vehicle; thus any purported disclaimers were ineffective pursuant to 15 U.S.C. § 2308(c).

50. Defendant violated the Mag-Moss Act when it breached the express warranty and implied warranties by failing to repair the defects and nonconformities, or to replace the Vehicle.

51. Plaintiff has also met all of Plaintiff's obligations and preconditions to bring this claim, or alternatively it would have been futile for Plaintiff to do so.

52. In addition, Plaintiff has met all of Plaintiff's obligations for bringing this claim as provided in the written warranties, or alternatively, Defendant does not maintain an informal dispute resolution process for the purpose of resolving claims for breach of the implied warranty of merchantability, and does not maintain an informal dispute resolution process for resolving express warranty claims that complies with the requirements of 15 U.S.C. § 2310(a) and the rules and regulations adopted pursuant thereto by the Federal Trade Commission.

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

53. As a direct and proximate result of the acts and omissions of the Defendant, Plaintiff has been damaged in the form of general, special and actual damages in an amount within the jurisdiction of this Court, according to proof at trial.

54. Under the Act, Plaintiff is entitled to reimbursement of the entire amount paid or payable.

55. Plaintiff is entitled to all incidental, consequential, penalties, and general damages resulting from Defendant's failure to comply with their obligations under the Mag-Moss Act.

56. Plaintiff has been damaged by Defendant's failure to comply with its obligations under the express warranty, implied warranty, as well as any other violations alleged here, and therefore brings this claim pursuant to 15 U.S.C. §2310(d) and seeks remedies available pursuant to Magnuson-Moss Act under California law, including California Civil Code Section 1794 and/or California Commercial Code Sections 2711-2715, and/or other remedies that the Court may deem proper.

57. Plaintiff is entitled under the Mag-Moss Act to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees, reasonably incurred in connection with the commencement and prosecution of this action pursuant to 15 U.S.C. § 2310(d)(2).

## PRAYER

PLAINTIFF PRAYS for judgment against Defendant as follows:

a. For Plaintiff's actual damages in an amount according to proof;

b. For restitution;

c. For a civil penalty in the amount of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (c) or (e);

d. For any consequential and incidental damages;

e. For costs of the suit and Plaintiff's reasonable attorneys' fees pursuant to Civil Code section 1794, subdivision (d);

f. For punitive damages;

g. For prejudgment interest at the legal rate; and

h. For such other relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action asserted herein.

Dated: July 14, 2017

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION

BY:

YOON KIM, Attorney for Plaintiff
IAN MCDONALD

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

Case 2:17-cv-06467-SVW-SK Document 1 Filed 08/31/17 Page 1 of 21 Page ID #:1

Christine Haw (SBN 289651)
e-mail: chaw@slpattorney.com
Yoon Kim (SBN 292650)
e-mail: ykim@slpattorney.com
**STRATEGIC LEGAL PRACTICES**
**A PROFESSIONAL CORPORATION**
1840 Century Park East, Suite 430
Los Angeles, CA 90067
Telephone: (310) 929-4900
Facsimile: (310) 943-3838

Attorneys for Plaintiff KWON CHAE YI

**UNITED STATES DISTRICT COURT FOR THE**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KWON CHAE YI,<br><br>Plaintiff,<br><br>vs.<br><br>BMW OF NORTH AMERICA, LLC; and DOES 1 through 10, inclusive,<br><br>Defendants. | Docket No.: 2:17-cv-6467<br><br>**COMPLAINT FOR VIOLATION OF STATUTORY OBLIGATIONS**<br><br>JURY TRIAL DEMANDED |

Plaintiff alleges as follows:

**JURISDICTION AND VENUE**

1. The Court possesses federal question subject matter jurisdiction over this action pursuant to 28 USC § 1331 for the claim arising under the Magnuson-Moss Warranty Act (referred to as "Mag-Moss"), 15 U.S.C. § 2301, *et seq*. This Court also possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs and Plaintiff and all Defendants are citizens of different states. This Court also possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1367(a).

2. Venue is proper in this district under 28 U.S.C. § 1391 because Defendant resides in and continuously conducts business in this district. Venue is also proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

**PARTIES**

3. As used in this Complaint, the word "Plaintiff" shall refer to Plaintiff KWON CHAE YI.

4. At the time of the filing of this Complaint, Plaintiff is a resident of the State of California and is domiciled in the County of Los Angeles.

5. As used in this Complaint, the word "Defendants" shall refer collectively to all Defendants named in this Complaint, while the term "Defendant BMW" shall refer to Defendant BMW OF NORTH AMERICA, LLC only.

6. At the time of the filing of this Complaint, Defendant BMW OF NORTH AMERICA, LLC is a single-member limited liability company, and its single member is BMW US Holding Corporation. Both are organized and in existence under the laws of the State of Delaware and have their principal place of business in the State of New Jersey. Defendant BMW OF NORTH

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

AMERICA, LLC is registered with the California Department of Corporations to conduct business in California. At all times relevant herein, Defendant was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in Los Angeles County.

7. Plaintiff is ignorant of the true names and capacities of the Defendants sued under the fictitious names DOES 1 to 10. They are sued pursuant to Code of Civil Procedure section 474. When Plaintiff becomes aware of the true names and capacities of the Defendants sued as DOES 1 to 10, Plaintiff will amend this Complaint to state their true names and capacities.

**TOLLING OF THE STATUTES OF LIMITATIONS**

8. To the extent there are any statutes of limitation applicable to Plaintiff's claims—including, without limitation, his express warranty and implied warranty—the running of the limitation periods have been tolled by equitable tolling, class action tolling (including, nut not limited to, the *Bang v. BMW of North America, LLC* (Case No. 2:15-CV-6945) Complaint, filed September 18, 2015, and First Amended Complaint, filed December 21, 2015, (attached hereto as Exhibit A), the discovery rule, fraudulent concealment rule, repair rule, and/or equitable estoppel.

**FIRST CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANTS**

**VIOLATION OF SUBDIVISION (D) OF CIVIL CODE SECTION 1793.2**

9. In or around December 2009, Plaintiff leased (and thereafter purchased) a 2009 BMW 750Li vehicle identification number WBAKB83519CY61799, (hereafter "Vehicle") which was manufactured and or distributed by Defendants. The Vehicle was leased or used primarily for personal, family, or household purposes. Plaintiff leased the Vehicle from a

person or entity engaged in the business of manufacturing, distributing, or selling consumer goods at retail.

10. In connection with the lease and/or purchase, Plaintiff received an express written warranty in which Defendants undertook to preserve or maintain the utility or performance of the Vehicle or to provide compensation if there is a failure in utility or performance for a specified period of time. The warranty provided, in relevant part, that in the event a defect developed with the Vehicle during the warranty period, Plaintiff could deliver the Vehicle for repair services to Defendants' representative and the Vehicle would be repaired.

11. During the warranty period, the Vehicle contained or developed defects, including but not limited to, defects causing excessive oil consumption; defects related to the Vehicle's engine; defects related to the Vehicle's turbocharger; defects related to the Vehicle's cooling system; defects related to the Vehicle's air conditioners; defects causing oil leaks; defects causing vacuum pump to leak oil; defects with the engine vacuum pump; defects with the Vehicle's fuel sensor; defects with the Vehicle's rubber fuel lines; defects with the Vehicle's metal fuel lines; defects causing illumination of the check engine light; defects causing illumination of the service engine soon light; defects causing abnormal noises, such as: rubbery squeaking noises, whining noises, rattling noises, etc.; defects causing vibrations at freeway speeds; defects necessitating excessive oil top-ups between oil services; defects related to faulty turbocharger auxiliary water pumps; defects related to faulty turbocharger coolant pumps; defects causing the Vehicle to run rough, run heavy, and/or sound rough; defects causing the illumination of the "low oil" light; defects causing low oil levels; defects causing the steering to wobble and/or feel loose; defects necessitating excessive alignments; defects causing oil to leak from the turbochargers; defects necessitating the premature replacement of valve guides; defects causing excessive and premature wear of all valve guides; defects

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

Case 2:17-cv-06467-SVW-SK Document 1 Filed 08/31/17 Page 5 of 21 Page ID #:5

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

causing the valve guides leaking oil into the cylinders; defects causing excessive overfueling; defects causing reduced power; defects causing the engine fan to continue to run 30 minutes after the Vehicle has been turned off; defects necessitating the replacement of the N63 timing chains; defects necessitating the replacement of the basic scope; defects necessitating the replacement of the transmission; defects causing the illumination of the transmission malfunction light; defects related to the seatbelts; defects causing the seatbelts to make abnormal noises; defects necessitating the replacement of the seatbelt assembly; defects causing the Vehicle to crank too long before starting; defects making it hard to start the Vehicle; defects causing the illumination of the low coolant light; defects causing the illumination of the engine hot warning light; defects causing cylinders to misfire; defects causing the illumination of the engine malfunction reduced power light; defects causing cracks in the crankcase vent tube; defects causing the crankcase vent tube to leak; defects related to faulty crankcase vent tubes; defects necessitating the premature replacement of the crankcase vent tubes; defects causing the Vehicle to shake; defects causing defects related to faulty fuel injectors; defects related to faulty cylinders; defects related to faulty spark plugs; defects related to faulty crank case vent tubes; defects related to faulty auxiliary coolant pumps; defects related to faulty auxiliary water pumps; defects related to faulty water pumps; and/or defects related to and all other defects as shown in the Vehicle repair history. Said defects substantially impair the use, value, or safety of the Vehicle.

12. Defendants and their representatives in this state have been unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of opportunities. Despite this fact, Defendants failed to promptly replace the Vehicle or make restitution to Plaintiff as required by Civil Code section 1793.2, subdivision (d) and Civil Code section 1793.1, subdivision (a)(2).

13. Plaintiff has been damaged by Defendants' failure to comply with its obligations pursuant to Civil Code section 1793.2, subdivision (d) and Civil Code section 1793.1, subdivision (a)(2), and therefore brings this cause of action pursuant to Civil Code section 1794.

14. Plaintiff suffered damages in a sum to be proven at trial in an amount that exceeds $25,000.00.

15. Defendants' failure to comply with its obligations under Civil Code section 1793.2, subdivision (d) was willful, in that Defendants and their representative were aware that they were unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of repair attempts, yet Defendants failed and refused to promptly replace the Vehicle or make restitution. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (c).

16. Defendants do not maintain a qualified third-party dispute resolution process which substantially complies with Civil Code section 1793.22. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (e).

17. Plaintiff seeks civil penalties pursuant to section 1794, subdivisions (c), and (e) in the alternative and does not seek to cumulate civil penalties, as provided in Civil Code section 1794, subdivision (f).

**SECOND CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANTS**

**VIOLATION OF SUBDIVISION (B) OF CIVIL CODE SECTION 1793.2**

18. Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

19. Although Plaintiff presented the Vehicle to Defendants' representative in this state, Defendants and their representative failed to

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

commence the service or repairs within a reasonable time and failed to service or repair the Vehicle so as to conform to the applicable warranties within 30 days, in violation of Civil Code section 1793.2, subdivision (b). Plaintiff did not extend the time for completion of repairs beyond the 30-day requirement.

20. Plaintiff has been damaged by Defendants' failure to comply with its obligations pursuant to Civil Code section 1793.2(b), and therefore brings this Cause of Action pursuant to Civil Code section 1794.

21. Plaintiff has rightfully rejected and/or justifiably revoked acceptance of the Vehicle, and has exercised a right to cancel the purchase. By serving this Complaint, Plaintiff does so again. Accordingly, Plaintiff seeks the remedies provided in California Civil Code section 1794(b)(1), including the entire contract price. In the alternative, Plaintiff seeks the remedies set forth in California Civil Code section 1794(b)(2), including the diminution in value of the Vehicle resulting from its defects. Plaintiff believes that, at the present time, the Vehicle's value is *de minimis.*

22. Defendants' failure to comply with their obligations under Civil Code section 1793.2(b) was willful, in that Defendants and their representative were aware that they were obligated to service or repair the Vehicle to conform to the applicable express warranties within 30 days, yet they failed to do so. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794(c).

**THIRD CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANTS**

**VIOLATION OF SUBDIVISION (A)(3) OF CIVIL CODE SECTION 1793.2**

23. Plaintiff incorporates by reference the allegations contained in paragraphs set forth above.

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

24. In violation of Civil Code section 1793.2, subdivision (a)(3), Defendants failed to make available to its authorized service and repair facilities sufficient service literature and replacement parts to effect repairs during the express warranty period. Plaintiff has been damaged by Defendants' failure to comply with its obligations pursuant to Civil Code section 1793.2(a)(3), and therefore brings this Cause of Action pursuant to Civil Code section 1794.

25. Defendants' failure to comply with its obligations under Civil Code section 1793.2, subdivision (a)(3) was wilful, in that Defendants knew of its obligation to provide literature and replacement parts sufficient to allow its repair facilities to effect repairs during the warranty period, yet Defendants failed to take any action to correct its failure to comply with the law. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages; pursuant to Civil Code section 1794(c).

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

**FOURTH CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANTS**

**BREACH OF EXPRESS WRITTEN WARRANTY**

**(CIV. CODE, § 1791.2, SUBD. (a); § 1794)**

26. Plaintiff incorporates by reference the allegations contained in paragraphs set forth above.

27. In accordance with Defendants' warranty, Plaintiff delivered the Vehicle to Defendants' representative in this state to perform warranty repairs. Plaintiff did so within a reasonable time. Each time Plaintiff delivered the Vehicle, Plaintiff notified Defendants and their representative of the characteristics of the Defects. However, the representative failed to repair the Vehicle, breaching the terms of the written warranty on each occasion.

28. Plaintiff has been damaged by Defendants' failure to comply with its obligations under the express warranty, and therefore brings this Cause of Action pursuant to Civil Code section 1794.

29. Defendants' failure to comply with its obligations under the express warranty was willful, in that Defendants and their authorized representative were aware that they were obligated to repair the Defects, but they intentionally refused to do so. Accordingly, Plaintiff is entitled to a civil penalty of two times of Plaintiff's actual damages pursuant to Civil Code section 1794(c).

**FIFTH CAUSE OF ACTION**

**BY PLAINTIFF AGAINST ALL DEFENDANTS**

**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

**(CIV. CODE, § 1791.1; § 1794)**

30. Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

31. Pursuant to Civil Code section 1792, the sale of the Vehicle was accompanied by Defendants' implied warranty of merchantability. Pursuant to Civil Code section 1791.1, the duration of the implied warranty is coextensive in duration with the duration of the express written warranty provided by Defendants, except that the duration is not to exceed one-year.

32. Pursuant to Civil Code section 1791.1 (a), the implied warranty of merchantability means and includes that the Vehicle will comply with each of the following requirements: (1) The Vehicle will pass without objection in the trade under the contract description; (2) The Vehicle is fit for the ordinary purposes for which such goods are used; (3) The Vehicle is adequately contained, packaged, and labelled; (4) The Vehicle will conform to the promises or affirmations of fact made on the container or label.

33. At the time of purchase, or within one-year thereafter, the Vehicle contained or developed the defects set forth above. The existence of each of these defects constitutes a breach of the implied warranty because the Vehicle (1) does not pass without objection in the trade under the contract description,

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

(2) is not fit for the ordinary purposes for which such goods are used, (3) is not adequately contained, packaged, and labelled, and (4) does not conform to the promises or affirmations of fact made on the container or label.

34. Plaintiff has been damaged by Defendants' failure to comply with its obligations under the implied warranty, and therefore brings this Cause of Action pursuant to Civil Code section 1794.

**SIXTH CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT BMW OF NORTH AMERICA, LLC ONLY**

**(Fraud)**

35. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

36. Plaintiff's sixth cause of action applies only as to Defendant BMW.

37. Plaintiff leased and purchased the Vehicle as manufactured with Defendant BMW's V-8, twin-turbocharged engine, which BMW and enthusiasts refer to as the "N63."

38. Defendant BMW committed fraud by allowing the Vehicle to be sold to Plaintiff without disclosing that the Vehicle and its N63 engine was defective and susceptible to sudden and premature failure.

39. In particular, Plaintiff is informed, believe, and thereon alleges that prior to Plaintiff acquiring the Vehicle, BMW was well aware and knew that the N63 engine installed on the Vehicle was defective but failed to disclose this fact to Plaintiff at the time of lease and sale and thereafter.[1]

40. Specifically, BMW knew (or should have known) that the twin-turbo charged engine had one or more defects that causes the subject vehicle to be unable to properly utilize the engine oil and, in fact, to improperly burn off and/or

[1] Indeed, Defendant has issued various internal technical bulletins to its dealers (not consumers) concerning the Engine Defect.

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

consume abnormally high amounts of oil (the "Oil Consumption Defect"). The Oil Consumption Defect decreases the lubrication available to engine parts, which results in premature failure. As a consequence, the Oil Consumption Defect requires unreasonably frequent oil changes and/or the addition of oil between scheduled oil changes.[2]

41. The Oil Consumption Defect is a safety concern because it prevents the engine from maintaining the proper level of engine oil, and causes voluminous oil consumption that cannot be reasonably anticipated or predicted. Therefore, the Oil Consumption Defect is unreasonably dangerous because it can cause engine failure while the subject vehicle is in operation at any time and under any driving conditions or speeds, thereby exposing the subject vehicle's driver, passengers, and others who share the road with them, to serious risk of accidents and injury.

42. Plaintiff is informed, believes and thereon alleges that Defendant BMW acquired its knowledge of the Oil Consumption Defect prior to Plaintiff acquiring the Vehicle, though sources not available to consumers such as Plaintiff, including but not limited to pre-production and post-production testing data, early consumer complaints about the engine defect made directly to BMW and its network of dealers, aggregate warranty data compiled from BMW's network of dealers, testing conducted by BMW in response to these complaints, as well as warranty repair and parts replacement data received by BMW from BMW's network of dealers, amongst other sources of internal information.

43. Plaintiff is informed, believe, and thereon alleges that while Defendant BMW knew about the Engine Defect, and its safety risks since mid-2008, if not before, BMW nevertheless concealed and failed to disclose the defective nature of the Vehicle and its N63 engine to Plaintiff at the time of lease

---

[2] The Oil Consumption Defect was particularly apparent in a recent Consumer Reports study on excessive oil consumption. Consumer Reports studied 498,900 vehicles across several makes and models for complaints about engine oil consumption and concluded BMW's twin turbocharged engine was included on four out of the five most defective vehicles.

and/or sale and thereafter. Had Plaintiff known that the Vehicle suffered from the Oil Consumption Defect, he would not have leased and/or purchased the Vehicle.

44. Indeed, Plaintiff alleges that prior to the lease and/or sale of the Vehicle to Plaintiff, Defendant BMW knew that the Vehicle and its N63 engine suffered from an inherent defect, was defective, would fail prematurely, and was not suitable for its intended use.

45. Defendant BMW was under a duty to Plaintiffs to disclose the defective nature of the Vehicle and its N63 engine, its safety consequences and/or the associated repair costs because:

a. Defendant BMW acquired its knowledge of the Oil Consumption Defect and its potential consequences prior to Plaintiff acquiring the Vehicle, through sources not available to consumers such as Plaintiff, including but not limited to pre-production and post-production testing data, early consumer complaints about the Oil Consumption Defect made directly to BMW and its network of dealers, aggregate warranty data compiled from BMW's network of dealers, testing conducted by BMW in response to these complaints, as well as warranty repair and part replacements data received by BMW from its network of dealers, amongst other sources of internal information;

b. Defendant BMW was in a superior position from various internal sources to know (or should have known) the true state of facts about the material defects contained in vehicles equipped with N63 engine; and

c. Plaintiff could not reasonably have been expected to learn or discover of the Vehicle's Oil Consumption Defect and its potential consequences until well after Plaintiff leased and/or purchased the Vehicle.

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

46. In failing to disclose the defects in the Vehicle's N63 engine, Defendant BMW has knowingly and intentionally concealed material facts and breached its duty not to do so.

47. The facts concealed or not disclosed by Defendant BMW to Plaintiff is material in that a reasonable person would have considered them to be important in deciding whether or not to lease and/or purchase the Vehicle. Had Plaintiff known that the Vehicle and its N63 engine were defective at the time of lease and/or sale, he would not have leased and/or purchased the Vehicle.

48. Plaintiff is a reasonable consumer who does not expect his engine to fail and not work properly. Plaintiff further expects and assumes that Defendant BMW will not sell or lease vehicles with known material defects, including but not limited to those involving the vehicle's N63 engine and will disclose any such defect to its consumers before selling such vehicles.

49. As a result of Defendant BMW's misconduct, Plaintiff has suffered and will continue to suffer actual damages.

**SEVENTH CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT BMW OF NORTH AMERICA, LLC ONLY**

**VIOLATION OF CONSUMER LEGAL REMEDIES ACT**

**(CIV. CODE §§ 1750 *et seq.*)**

50. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

51. Plaintiff's seventh cause of action applies only as to Defendant BMW.

52. Defendant is a "person" as defined by California Civil Code § 1761(c).

53. Plaintiff is a "consumer" within the meaning of California Civil Code § 1761(d).

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

54. In or around December 2009, Plaintiff leased (and thereafter purchased) the Vehicle as manufactured with Defendant's N63 engine.

55. Defendant violated the California Consumer Legal Remedies Act ("CLRA") when, inter alia, it engaged in unfair and deceptive acts, and by knowingly warranting and allowing to be sold to Plaintiff the Vehicle without disclosing that the subject vehicle and its engine was defective and susceptible to sudden and premature failure.

56. In particular, Plaintiff is informed, believes, and thereon alleges that prior to Plaintiff acquiring the subject vehicle, BMW was well aware and knew that the twin-turbo charged engine installed on the subject vehicle was defective but failed to disclose this fact to Plaintiff at the time of lease and thereafter.[3]

57. Specifically, BMW knew (or should have known) that the twin-turbo charged engine had one or more defects that causes the subject vehicle to be unable to properly utilize the engine oil and, in fact, to improperly burn off and/or consume abnormally high amounts of oil (the "Oil Consumption Defect"). The Oil Consumption Defect decreases the lubrication available to engine parts, which results in premature failure. As a consequence, the Oil Consumption Defect requires unreasonably frequent oil changes and/or the addition of oil between scheduled oil changes.[4]

58. The Oil Consumption Defect is a safety concern because it prevents the engine from maintaining the proper level of engine oil, and causes voluminous oil consumption that cannot be reasonably anticipated or predicted. Therefore, the Oil Consumption Defect is unreasonably dangerous because it can cause engine

[3]Indeed, Defendant has issued various technical bulletins to its dealers (not consumers) concerning the defective twin-turbo charged engine, including numerous bulletins intended to address the Oil Consumption Defect.

[4] The Oil Consumption Defect was particularly apparent in a recent Consumer Reports study on excessive oil consumption. Consumer Reports studied 498,900 vehicles across several makes and models for complaints about engine oil consumption and concluded BMW's twin turbocharged engine was included on four out of the five most defective vehicles.

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

failure while the subject vehicle is in operation at any time and under any driving conditions or speeds, thereby exposing the subject vehicle's driver, passengers, and others who share the road with them, to serious risk of accidents and injury.

59. Plaintiff is informed, believes and thereon alleges that BMW acquired its knowledge of the Oil Consumption Defect prior to Plaintiff acquiring the subject vehicle, though sources not available to consumers such as Plaintiff, including but not limited to pre-production and post-production testing data, early consumer complaints about the engine defect made directly to BMW and its network of dealers, aggregate warranty data compiled from BMW's network of dealers, testing conducted by BMW in response to these complaints, as well as warranty repair and parts replacement data received by BMW from BMW's network of dealers, amongst other sources of internal information.

60. Plaintiff is informed, believes, and thereon alleges that while Defendant knew about the Oil Consumption Defect, and its safety risks since mid-2008, if not before, Defendant nevertheless concealed and failed to disclose the defective nature of the Vehicle and its engine to Plaintiff at the time of lease and thereafter. Had Plaintiff known that the subject Vehicle suffered from the Oil Consumption Defect, he would not have purchased the subject vehicle.

61. By failing to disclose and concealing the defective nature of the N63 engine from Plaintiff, Defendant violated California Civil Code § 1770(a), as it represented that the Vehicle and its engine had characteristics and benefits that they do not have, and represented that the Vehicle and its engine were of a particular standard, quality, or grade when they were of another. *See* Cal. Civ. Code §§ 1770(a)(5) and (7).

62. Unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving not only Plaintiff but a substantial portion of the purchasing public, and imposed a serious safety risk on the public, including Plaintiff.

63. Defendant knew that the Vehicle and its engine suffered from an inherent defect, was defective, would fail prematurely, and was not suitable for its intended use.

64. Defendant was under a duty to Plaintiff to disclose the defective nature of the Vehicle and its twin-turbocharged engine, its safety consequences and/or the associated repair costs because:

a. Defendant acquired its knowledge of the Oil Consumption Defect and its potential consequences prior to Plaintiff acquiring the subject vehicle, though sources not available to consumers such as Plaintiff, including but not limited to pre-production testing data, early consumer complaints about the Oil Consumption Defect made directly to BMW and its network of dealers, aggregate warranty data compiled from BMW's network of dealers, testing conducted by BMW in response to these complaints, as well as warranty repair and part replacements data received by BMW from BMW's network of dealers, amongst other sources of internal information;

b. Defendant was in a superior position from various internal sources to know (or should have known) the true state of facts about the material defects contained in vehicles equipped with N63 engine; and

c. Plaintiff could not reasonably have been expected to learn or discover of the Vehicle's Oil Consumption Defect and its potential consequences until well after Plaintiff purchased the Vehicle.

65. In failing to disclose the defects in the Vehicle's engine, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

66. The facts concealed or not disclosed by Defendant to Plaintiff are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Vehicle. Had Plaintiff known that the Vehicle and its engine were defective at the time of lease, he would not have leased the Vehicle.

67. Plaintiff is a reasonable consumer who does not expect his engine to fail and not work properly. Plaintiff further expects and assumes that Defendant will not sell or lease vehicles with known material defects, including but not limited to those involving the vehicle's engine and will disclose any such defect to its consumers before selling such vehicles.

68. As a result of Defendant's misconduct, Plaintiff has been harmed and has suffered actual damages.

69. As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiff has suffered and will continue to suffer actual damages.

70. Plaintiff is entitled to equitable and injunctive relief under the CLRA.

71. Plaintiff has provided Defendant with notice of its alleged violations of the CLRA pursuant to California Civil Code § 1782(a). If, within 30-days, Defendant fails to provide appropriate relief for its violations of the CLRA, Plaintiff will amend this Complaint to seek monetary, compensatory, and punitive damages, in addition to the injunctive and equitable relief he seeks now.

72. Accordingly, in connection with his CLRA claim only, Plaintiff is seeking only injunctive and equitable relief at this time.

**EIGHTH CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANTS**

**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

73. Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

74. Plaintiff is a "consumer" as defined in the Magnuson-Moss Warranty Act (referred to as "Mag-Moss"), 15 U.S.C. § 2301(3).

75. Defendant is a "supplier" and "warrantor" as defined in the Mag-Moss Act, 15 U.S.C. § 2301(4), 15 U.S.C. § 2301(5).

76. The Vehicle is a "consumer product" as defined in the Mag-Moss Act, 15 U.S.C. § 2301(1).

77. In addition to the express warranty, in connection with the sale of the Vehicle to Plaintiff, an implied warranty of merchantability was created under California law. The Vehicle's implied warranties were not disclaimed using a Buyer's Guide displayed on the Vehicle; thus any purported disclaimers were ineffective pursuant to 15 U.S.C. § 2308(c).

78. Defendant violated the Mag-Moss Act when it breached the express warranty and implied warranties by failing to repair the defects and nonconformities, or to replace the Vehicle.

79. Plaintiff has also met all of Plaintiff's obligations and preconditions to bring this claim, or alternatively it would have been futile for Plaintiff to do so.

80. In addition, Plaintiff has met all of Plaintiff's obligations for bringing this claim as provided in the written warranties, or alternatively, Defendant does not maintain an informal dispute resolution process for the purpose of resolving claims for breach of the implied warranty of merchantability, and does not maintain an informal dispute resolution process for resolving express warranty claims that complies with the requirements of 15 U.S.C. § 2310(a) and the rules and regulations adopted pursuant thereto by the Federal Trade Commission.

81. As a direct and proximate result of the acts and omissions of the Defendant, Plaintiff has been damaged in the form of general, special and actual

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

damages in an amount within the jurisdiction of this Court, according to proof at trial.

82. Under the Act, Plaintiff is entitled to reimbursement of the entire amount paid or payable.

83. Plaintiff is entitled to all incidental, consequential, penalties, and general damages resulting from Defendant's failure to comply with their obligations under the Mag-Moss Act.

84. Plaintiff has been damaged by Defendant's failure to comply with its obligations under the express warranty, implied warranty, as well as any other violations alleged here, and therefore brings this claim pursuant to 15 U.S.C. §2310(d) and seeks remedies available pursuant to Magnuson-Moss Act under California law, including California Civil Code Section 1794 and/or California Commercial Code Sections 2711-2715, and/or other remedies that the Court may deem proper.

85. Plaintiff is entitled under the Mag-Moss Act to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees, reasonably incurred in connection with the commencement and prosecution of this action pursuant to 15 U.S.C. § 2310(d)(2).

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

**PRAYER**

PLAINTIFF PRAYS for judgment against Defendant as follows:

a. For Plaintiff's actual damages in an amount according to proof;
b. For restitution;
c. For a civil penalty in the amount of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (c) or (e);
d. For any consequential and incidental damages;

Case 2:17-cv-06467-SVW-SK Document 1 Filed 08/31/17 Page 20 of 21 Page ID #:20

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

e. Immediately cease the sale and leasing of any BMW vehicles equipped with the N63 engine of the same make, year and model as the subject vehicle at all BMW dealerships in the state of California without first having notified the purchasers or lessee of these vehicles about the Oil Consumption Defect, and otherwise cease to engage in the violations of the Consumer Legal Remedies Act, as set forth above;

f. For costs of the suit and Plaintiff's reasonable attorneys' fees pursuant to Civil Code section 1794, subdivision (d);

g. For punitive damages;

h. For prejudgment interest at the legal rate; and

i. For such other relief as the Court may deem proper.

//

//

//

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action asserted herein.

Dated: August 25, 2017

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION

BY: /S/ YOON KIM

Yoon Kim, Attorney for Plaintiff
Kwon Chae Yi
STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 Century Park East, Suite 430
Los Angeles, California 90067
Telephone: (310) 929-4900
Facsimile: (310) 943-3838

Registered participant of ECF

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

EXHIBIT B

TO REQUEST FOR JUDICIAL NOTICE

Payam Shahian (State Bar No. 228406)
e-mail: pshahian@slpattorney.com
Erin Melody-Rosenfeld (SBN 225517)
e-mail: emelody-rosenfeld@slpattorney.com
Tionna Dolin (SBN 299010)
Email: tdolin@slpattorney.com
STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
1840 Century Park East, Suite 430
Los Angeles, CA 90067
Telephone: (310) 929-4900
Facsimile: (310) 943-3838

Attorneys for SLP Plaintiffs

RECEIVED
JAN 15 2019
BOWMAN AND BROOKE LLP
LOS ANGELES

**CHAIRPERSON OF THE JUDICIAL COUNSEL**

**OF THE STATE OF CALIFORNIA**

| | |
|---|---|
| IN RE: KIA MOTOR VEHICLES CASES | Judicial Counsel Coordination Proceeding |
| OLENA DARMOHRAY<br><br>Plaintiff,<br><br>v.<br><br>KIA MOTORS AMERICA, INC., and DOES 1 through 10, inclusive,<br><br>Defendants. | JCCP No. 4987<br><br>Santa Clara Superior Court Case No. 18CV329904<br><br>**DECLARATION OF ERIN MELODY-ROSENFELD IN SUPPORT OF SLP PLAINTIFFS' OPPOSITION TO KIA MOTORS AMERICA, INC.'S PETITION FOR COORDINATION**<br><br>Hearing Date: January 28, 2019<br>Hearing Time: 1:45pm<br>Hearing Dept: 11<br><br>[*Concurrently filed with SLP Plaintiffs' Opposition and Request for Judicial Notice*] |

**DECLARATION OF ERIN MELODY-ROSENFELD**

I, Erin Melody-Rosenfeld, declare as follows:

1. I am an attorney admitted to the Bar of the State of California. I am an attorney with Strategic Legal Practices, APC ("Strategic"), counsel of record for the SLP Plaintiffs

(hereinafter "SLP Plaintiffs") in the above-entitled action. My knowledge of the information and events described herein derives from a combination of my personal knowledge and a careful review of the file, relevant court records and communications with other Plaintiffs' counsel, and if called as a witness, I could and would competently testify thereto.

2. I submit this declaration in support of SLP Plaintiffs' Opposition to Kia Motors America, Inc.'s Petition for Coordination

3. Attached as **Exhibit 1** hereto is a true and correct copy of an Appendix containing a detailed, case-by-case analysis of the 30 SLP Cases that Kia seeks to coordinate.

4. These types of cases typically involve relatively small numbers of witnesses and the documentary evidence is rarely voluminous such that specialized "management" is required. Five to six trial witnesses are usually sufficient, including the plaintiff(s), one expert per side, a Kia person most qualified as to the defects and the repurchase process, and possibly one to two technicians who serviced the vehicle.

5. Documentary evidence usually includes case-specific documents like sales agreements, repair orders, warranty claim histories, and expert witness reports, along with more generalized owners' manuals and warranty documents and Kia's policies and procedures and internal investigations about defects.

6. Kia also "anticipates" that it will file motions for summary judgment and motions to compel arbitration, although it does not indicate that these motions will be filed in all or even most of the 98 cases (in particular, motions for summary judgment are quite rarely filed in Song-Beverly Act cases and there are no known grounds to compel arbitration for the 30 SLP Plaintiffs).

7. On the contrary, the only motions typically filed in these cases are challenges to the pleadings; occasional discovery motions; and occasional motions for summary judgment. None of these motions involve unique or novel issues, and they are no more time-consuming to resolve than are similar motions routinely filed in cases of every type across this State.

8. Song-Beverly Act cases require no postjudgment supervision whatsoever: once a judgment is entered for damages, civil penalties (where applicable), and attorney's fees and costs,

each case is permanently dismissed without further judicial supervision.

9. Each of the Included Actions requires a case-specific analysis for adjudication as each involves different vehicles, defects, repair histories, and perhaps most crucially, different claims evaluations and repurchase/replacement decisions.

10. Because the Included Actions require case-specific analysis, each requires case-specific discovery, including the plaintiff(s)' deposition, vehicle inspections and testing, deposition of Kia's person(s) most knowledgeable on case specific questions, written discovery on case-specific questions, and depositions of repair technicians who worked on the subject vehicle in each case.

11. Each Included Action has different damages depending upon the plaintiff's circumstances and intended use of the vehicle; type of defect and impairment of the use, value, and safety of the vehicle; the initial and diminished value of the vehicle, and in some cases its disposition prior to trial; the number and outcome of each vehicle's attempted repairs; the plaintiff's efforts to obtain relief before litigation; Kia's evaluation, decision, and communication regarding each plaintiff's different situation and/or request for repurchase or replacement; and other fact-specific issues unique to each case.

12. Kia suggests, without evidence, that coordination will "facilitate settlement." However, lemon law cases settle readily without coordination.

13. The pressure of a rapidly approaching trial date often induces the settlement of a civil action. SLP has prosecuted thousands of Song-Beverly Act cases against various auto manufacturers within the past several years, and the vast majority of settlements reached occurred within close proximity to the trial date.

I declare under the penalty of perjury that the foregoing is true and correct. Executed this 14th day of January, 2019, in Los Angeles, California.

Erin Melody-Rosenfeld

EXHIBIT C
TO REQUEST FOR JUDICIAL NOTICE

**SUPERIOR COURT OF CALIFORNIA,**

COUNTY OF SAN DIEGO

HALL OF JUSTICE

TENTATIVE RULINGS - July 16, 2019

EVENT DATE: 07/19/2019 EVENT TIME: 01:30:00 PM DEPT.: C-72

JUDICIAL OFFICER: Timothy Taylor

CASE NO.: 37-2017-00042273-CU-BC-CTL

CASE TITLE: ALLEN VS JAGUAR LAND ROVER NORTH AMERICA LLC [IMAGED]

CASE CATEGORY: Civil - Unlimited CASE TYPE: Breach of Contract/Warranty

EVENT TYPE: Motion Hearing (Civil)

CAUSAL DOCUMENT/DATE FILED: Motion for Attorney Fees, 06/26/2019

---

**Tentative Ruling on Motion for Attorneys' Fees, Costs, and Expenses**

*Allen v. Jaguar Land Rover*, Case No. 2017-42273

July 19, 2019, 1:30 p.m., Dept. 72

**1. <u>Overview and Procedural Posture</u>.**

This is a "lemon law" case involving plaintiff Jamie Allen's purchase, in 2016, of a used 2015 Land Rover Evoque. The complaint filed in November of 2017 alleged "defective Engine System, defective Infotainment System, defective Drivetrain System, check engine light being illuminated, vehicle lurching, failing turbo chargers, defective rear differential, defective power transfer unit, oil leakage and noises during start-up, among other concerns." ROA 1, paragraph 12.

Defendants Jaguar Land Rover North American, LLC and Kuni SDL, LLC ("defendants") answered in February and October of 2018 (ROA 8, 25), and in due course the court set the case for trial in early 2019. ROA 18-22. Shortly before the TRC, however, the parties notified the court the case has settled, subject to the present motion for attorneys' fees (which has been calendared several times). ROA 30-32. No moving papers were received for the May 3, 2019 hearing, and no party informed the court that the parties had resolved the attorneys' fee issue. This led the court to tentatively set an OSC re sanctions. ROA 34. Plaintiff's counsel filed a declaration (ROA 35), and the court did not impose sanctions. ROA 37.

The motion is finally before the court. ROA 38-43. It seeks an award of attorneys' fees of $21,258.00 and costs and expenses of $816.55. *See* ROA 38, notice of motion, p. 2:10-16. Defendants filed opposition which contends both the requested attorneys' fees and moving counsel's hourly rate "are too high". ROA 44-46. The opposition adds defendants "believe that $8,500 reflects the amount reasonably incurred on this routine case." Plaintiff filed reply. ROA 47-49. The court has reviewed the papers.

**2. <u>Applicable Standards</u>.**

**A.** A buyer of consumer goods who is damaged by breach of the express or implied warranties may bring an action to recover damages pursuant to the Song-Beverly Act (*Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 121), which is designed to give consumers broader protection for breach

of warranty than buyers would have under the common law or the California Uniform Commercial Code (*Jiagbogu v. Mercedes–Benz USA* (2004) 118 Cal.App.4th 1235, 1241).

As the court was sternly reminded last year by the Court of Appeal, the Song-Beverly Act is a *remedial* statute designed to protect consumers who have purchased products covered by an express warranty. *Jensen v. BMW of North America, Inc. supra*, at 121. It requires a manufacturer to replace "consumer goods" or reimburse the buyer if the manufacturer or its representative is unable to repair the consumer good after a reasonable number of attempts. Civil Code § 1793.2(d)(1). The Act similarly provides that if a manufacturer or its representative in this state fails to repair a "new motor vehicle" to conform to any express warranty after a reasonable number of attempts to repair, the manufacturer must replace the vehicle or pay restitution. Civil Code § 1793.2(d)(2).

A plaintiff pursuing an action under the Act has the burden to prove that (1) the product had a nonconformity covered by the express warranty that substantially impaired the use, value or safety of the product; (2) the product was presented to an authorized representative of the manufacturer for repair; and (3) the manufacturer or its representative did not repair the nonconformity after a reasonable number of repair attempts. *Oregel v. American Isuzu Motors, Inc.* (2001) 90 Cal.App.4th 1094, 1101. "The reasonableness of the number of repair attempts is a question of fact to be determined in light of the circumstances, but at a minimum there must be more than one opportunity to fix the nonconformity. [Citation.]" *Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 799. For new motor vehicles there is a *presumption* of failure to conform to warranty within a reasonable number of attempts after four repairs of the same nonconformity and notification to the manufacturer of the need for repair. Civil Code § 1793.22(b)(2).

Damages for breach of an express warranty on a new automobile is governed by Civil Code section 1793.2. If the manufacturer is unable to service or repair a vehicle to conform to an express warranty after a reasonable number of attempts, the buyer may seek replacement or restitution. Civil Code § 1793.2(d)(2). Restitution shall be "in an amount equal to the actual price paid or payable by the buyer...." Civil Code § 1793.2(d)(2)(B). The "actual price paid or payable" may be reduced by any amount attributable to the buyer's use prior to the first time the buyer brought the car in for repair. Civil Code § 1793.2(d)(2)(C] (formula for calculating the "amount directly attributable to use by the buyer"). In addition, the buyer is entitled to incidental or consequential damages as defined in California Uniform Commercial Code section 2715. Civil Code § 1794; *Kwan v. Mercedes–Benz of North America, Inc.* (1994) 23 Cal.App.4th 174, 187-188.

The replacement/restitution remedy is available only for breach of an express warranty. *Gavaldon v. DaimlerChrysler Corp.* (2004) 32 Cal.4th 1246, 1262. Damages for breach of an implied warranty is governed by Civil Code section 1791.1(d) which provides, "Any buyer of consumer goods injured by a breach of the implied warranty of merchantability ... has the remedies provided in Chapter 6 (commencing with Section 2601) and Chapter 7 (commencing with Section 2701) of Division 2 of the [California Uniform] Commercial Code, and, in any action brought under such provisions, Section 1794 of this chapter shall apply." When the buyer accepts the goods, damages for breach of the implied warranty include damages available under California Uniform Commercial Code sections 2714 and 2715. Civil Code § 1794(b)(2).

Under California Uniform Commercial Code section 2714, subdivision (2), the measure of damages for breach of warranty where the buyer has accepted goods, "is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." *See Isip v. Mercedes–Benz USA, LLC* (2007) 155 Cal.App.4th 19, 25.

**B.** California follows the "American rule," under which each party to a lawsuit ordinarily must pay his, her or its own attorney fees. *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 237; *Trope v. Katz* (1995) 11 Cal.4th 274, 278; *Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 504. Code of Civil Procedure section 1021 codifies the rule, providing that the measure and

mode of attorney compensation is left to the agreement of the parties "[e]xcept as attorney's fees are specifically provided for by statute." One such statute is Civil Code section 1794(d) (for the Song-Beverly Consumer Warranty Act claim).

A trial court ordinarily has broad discretion in determining a reasonable amount of attorney fees. *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095. "[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. . . . The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided. [Citation.] Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." *Id.*

Generally, a trial court is not required to provide a detailed explanation of how it arrived at a fee award. *See, e.g., Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1294-1295; *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 65-67. California courts have explicitly departed from federal law requiring district courts to explain their fee awards with particularity. *See, e.g., Gorman v. Tassajara Development Corp.*, *supra*, at 66-67; *Californians for Responsible Toxics Management v. Kizer* (1989) 211 Cal.App.3d 961, 970.

Case law makes clear that prevailing plaintiffs are entitled to fees for pursuit of fee claims. *Graham v. Daimler Chrysler* (2004) 34 Cal.4th 553, 580; *Ketchum v. Moses* (2001) 24 Cal.4th 122, 133-34.

**C.** A trilogy of recent published cases from two divisions of the 4th DCA and from the 2d DCA Division 7 served as reminders of what trial court may <u>not</u> do in addressing fee applications in lemon law cases. In *Warren v. Kia Motors* (2018) 30 Cal.App.5th 24, 39, the court held that trial courts may not make fee awards which reduce lodestars in an effort to make the award "roughly proportional" to the damages awarded. In *Etcheson v. Chrysler* (2018) 30 Cal.App.5th 831, the court held a trial court may not consider a technically invalid Code of Civil Procedure section 998 offer in determining the reasonableness of attorneys' fees incurred following the making of that offer. *Id*. at 846. And in *Hanna v. Mercedes Benz* (June 18, 2019) 2019 WL 2511940, the court held the trial court had erred in reducing plaintiff's counsel's demand for $259,000 to $60,000 based on a contingent fee agreement the lawyers had signed with their client: "While the trial court has broad discretion to increase or reduce the proposed lodestar amount based on the various factors identified in case law, including the complexity of the case and the results achieved, the court's analysis must begin with the 'actual time expended, determined by the court to have been reasonably incurred.' '[I]t is inappropriate and an abuse of a trial court's discretion to tie an attorney fee award to the amount of the prevailing buyer/plaintiff's damages or recovery in a Song-Beverly Act action.'" 2019 WL 2511940 at p. 10.

**3. <u>Evidentiary Objections</u>.**

Included with the opposition (ROA 45) are 14 evidentiary objections to the Nita declaration (ROA 40). A proposed order is not provided for ruling on the evidentiary objections. *See* CRC 3.1354(c) (proposed order requirement in summary judgment/adjudication context).

The evidentiary objections are overruled. Many are boilerplate and unwarranted. For the most part, attorney Nita states personal knowledge for the matters stated in his declaration. Also, the evidentiary objections are essentially what the Supreme Court had in mind when it wrote, in another context:

"We recognize that it has become common practice for litigants to flood the trial courts with inconsequential written evidentiary objections, without focusing on those that are critical. Trial courts are often faced with innumerable objections commonly thrown up by the parties as part of the all-out artillery exchange that summary judgment has become. (*Mamou v. Trendwest* Resorts, Inc. (2008) 165 Cal.App.4th 686, 711-712.) Indeed, the *Biljac* procedure itself was designed to ease the extreme burden on trial courts when all too often litigants file blunderbuss objections to virtually every item of evidence submitted. (*Demps*, *supra*, 149 Cal.App.4th at pp. 578-579, fn. 6; *Biljac*, *supra*, 218 Cal.App.3d at p.

1419, fn. 3) ... To counter that disturbing trend, we encourage parties to raise only meritorious objections to items of evidence that are legitimately in dispute and pertinent to the disposition of the summary judgment motion."

*Reid v. Google, Inc*. (2010) 50 Cal.4th 512, 532.

In line with the Supreme Court's view, the court encourages counsel to raise only meritorious and important objections in the future.

**4. <u>Discussion and Ruling</u>.**

**A.** Based on the aforementioned trilogy of cases, the court considers its hands largely tied in this matter. The Courts of Appeal uniformly held that the trial courts could not consider proportionality or the legitimate needs of the case. Instead, the rule appears to be that as long as plaintiff's counsel can articulate some "reason" for incurring the fee, the trial court must award it. While this trial judge accepts, as it must, these appellate court expositions as reflective of the current state of the law, the court would be remiss in failing to add that it nevertheless considers this to be bad policy for our state, for several interrelated reasons.

It has long been held that the "experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his [or her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 148*; see also 569 East County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 433. Yet the Courts in *Warren, Hanna,* and *Etcheson* reversed the trial courts because the Justices interpreted Civil Code section 1794(d) as forbidding consideration of the legitimate needs of the case or the proportionality of the fee request to the result obtained in the litigation. The Legislature should step in to address this.

Lemon law cases are commodity cases; rarely are "cutting edge" legal principles involved.* Ordinarily, these cases seek to remedy the problems experienced by a single consumer with a single vehicle. Yet because of the current wording of section 1794(d) as interpreted by the Courts of Appeal, the lemon law plaintiff's bar has been emboldened to over-litigate cases the manufacturers regularly seek to settle, with no benefit to the injured consumer. Indeed, the over- litigation for purposes of padding the fee application can actually injure the consumer, by delaying resolution of the case and the buy-back of the vehicle. As this court has previously observed, the fee shifting provisions of the "lemon law" statutes have been twisted from the purpose contemplated by the Legislature into something the well-intentioned drafters of the statutory framework would scarcely recognize. When a statutory scheme becomes a vehicle for lawyers to create unnecessary conflict for no other reason than running up the fees, that statute needs to be re-examined. When lawyers put their own fee-driven interests ahead of the interests of their clients, the integrity of the legal profession is threatened. When court time that could be more beneficially used in other areas is instead used in resolving bloated fee disputes, the courts and the litigants suffer.

Accordingly, the court urges the Legislature to amend Civil Code section 1794(d) by adding the following language: "In determining whether fees were reasonably incurred, the court may consider, among other factors, the legitimate needs of the case, the reasonableness of the parties' efforts to settle the case, and the proportionality of the fee request to the result obtained in the litigation for the injured consumer."

Turning to the current fee application: The parties agreed that plaintiff is entitled to an award of reasonable attorneys' fees and costs pursuant to Civil Code section 1794(d), which will be determined on a noticed motion. *See* ROA 40, Nita supporting declaration, paragraph 14. Thus, the issue to be resolved is the appropriate amount of a reasonable fee award for plaintiff in a case in which the value of the settlement was about $40,000.00. Moving Br. at 5:6-10, 7:3-4.

The court finds the hourly rate charged by plaintiff's counsel, Mr. Nita, is on the high side for a

garden-variety lemon law case such as this in the San Diego community as to attorneys with similar experience and expertise. In this regard, Mr. Nita has been an attorney since 2003 and charges $500.00 per hour. *See* ROA 40, Nita supporting declaration, paragraph 16-17, 20. Also, the motion identifies five trial court rulings in 2018 and 2019 from other cases involving plaintiff's counsel (three rulings approving a $450.00 per hour rate in 2019; two rulings approving a $500.00 per hour rate in 2018 and 2019), yet the moving papers fail to mention the facts of those cases and whether the defendants in those cases challenged the attorneys' fee application.** *Id*., paragraphs 29-33. Further, the motion fails to explain why Mr. Nita's hourly rate should be more than the $450.00 per hour awarded to Mr. Nita in the three attorneys' fees applications approved in 2019. *Id*., paragraphs 31-33.

The billing rates for the two San Diego lemon law attorneys mentioned in the motion (Rosner and Lindsay, at least one of which has received a fee award from this court) have practiced law since 1983 and 1993, respectively, well before plaintiff's attorney worked on this case. *Id.,* paragraphs 22-23 (billing rates for two San Diego lemon law attorneys). The billing rates for the Los Angeles lemon law attorneys related in the motion have practiced law "for over 20 years", a longer period than Mr. Nita. *Id*., paragraph 24. The motion fails to explain why Mr. Nita should receive an hourly rate as high as these other San Diego and Los Angeles attorneys. So the court finds that $450/hr. is a reasonable hourly rate for Mr. Nita.

The court makes the foregoing observations having run cases and supervised associates and sent out bills and successfully pursued attorneys' fees applications while in practice in San Diego prior to 2005, and having ruled on hundreds of attorneys' fees applications in a variety of settings in the nearly 15 years since. "[T]he trial court is in the best position to value the services rendered by the attorneys in his or her courtroom ... the court may rely on its own knowledge and familiarity with the legal market, as well as the experience, skill, and reputation of the attorney requesting fees". *See 569 East County Boulevard, LLC* v. *Backcountry Against the Dump, Inc., supra,* 6 Cal.App.5th at 436-437.

Turning to the hours expended by plaintiff's counsel, the hours expended are also a little on the high side given the needs of the case. *See 569 East County Boulevard, LLC v. Backcountry Against the Dump, Inc., supra*, 6 Cal.App.5th at 440-441 (trial court may reduce attorney hours if it concludes the attorneys performed work unrelated to the special motion to strike or represented work that was unnecessary in view of the issues presented). Plaintiff's attorney expended a total of 41.33 hours on this file. *See* ROA 40, Nita supporting declaration, Exhibit A, p. 7.

Mr. Nita could have utilized properly supervised paralegal staff who could have performed routine legal work. Instead, Mr. Nita billed and performed all legal services himself, suggesting inefficiency. *See* ROA 40, Nita supporting declaration, Exhibit A. As such, the case was not properly leveraged. Also, this action was a garden-variety lemon law case. There were no complicated legal or factual issues; the complaint pled only two counts. No specialized skill was needed to prosecute the case. Further, the case settled with no depositions being conducted and without responses by plaintiff to defendants' discovery. *See* ROA 46, Hurvitz opposition declaration, paragraph 13. Moreover, written discovery was propounded by plaintiff and defendants (*see*, *e.g*., ROA 46, Hurvitz opposition declaration, Exhibit D, plaintiff's written discovery), yet the written discovery was no different than one would expect in a garden-variety lemon law case. In addition, no expert discovery is indicated. Likewise, the fees charged for making the motion, approximately $5,625.00, are high (11.25 hours x $500.00 per hour) when considering plaintiff's attorney claims he is an experienced lemon law attorney (and claims he has made such a motion for fees several times before). *See* ROA 40, Nita supporting declaration, paragraphs 19, 25-33. Possibly contributing to the inefficiency was the disruptive office move described by Mr. Nita in ROA 35. As such, the hours expended by plaintiff's counsel are somewhat excessive.

Accordingly, the court finds a modest reduction is in order and awards plaintiff the sum of $18,000.00 as reasonable attorneys' fees under the circumstances.

**B.** Turning to plaintiff's request for costs and expenses, plaintiff seeks total costs and expenses of

$816.55.*** Defendants' opposition does not challenge this sum. Thus, plaintiff may recoup his costs of $816.55. However, defendants' opposition challenges the "Administrative Fees" of $600.00 set forth in the Nita Law Firm Invoice. *See* ROA 40, Exhibit A, p. 7. Plaintiff fails to substantiate "Administrative Fees" of $600.00. This amount is not allowed to the extent plaintiff seeks to recoup the expense.

Accordingly, plaintiff is awarded costs of $816.55, as requested in plaintiff's notice of motion.

**C.** Plaintiff's counsel must supply a form of judgment in plaintiff's favor: attorneys' fees of $18,000.00, and costs of $816.55.

___________

*In a non-commodity, high risk case involving defective automobiles (*Lockabey v. American Honda*, No. 2010-087755), this court awarded very substantial attorneys' fees several years ago.

**Included with the reply papers are new matters, not included in the moving papers: the trial court rulings in recent lemon law cases handled by plaintiff's attorney (and only mentioned in the moving papers). *See* ROA 40 Nita reply declaration, Exhibits E-I (the recent rulings). The new matters are disregarded. *See San Diego Watercrafts, Inc. v. Wells Fargo Bank, N.A*. (2002) 102 Cal.App.4th 308, 316 (due process requires a party be fully advised of the issues to be addressed and be given adequate notice of what facts it must rebut in order to prevail); *Zamani v. Carnes* (9th Cir. 2007) 491 F.3d 990, 997 ("[t]he district court need not consider arguments raised for the first time in a reply brief"); *American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453 ("[p]oints raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument"); *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 ("'the rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before.'") Moreover, none of the trial court rulings involved the relevant San Diego legal community. Instead, three rulings are from the Los Angeles Superior Court, one ruling is from the San Bernardino Superior Court, and one ruling is from the Monterey Superior Court. "In determining hourly rates, the court must look to the 'prevailing market rates in the relevant community'", which here is the San Diego community. *See Heritage Pacific Financial LLC v. Munroy* (2013) 215 Cal.App.4th 972, 1009.

***Although the notice of motion seeks $816.55, plaintiff's costs memorandum seeks $816.65. *See* ROA 41. The notice of motion must state in the first paragraph exactly what relief is sought and why. *See* Code of Civil Procedure § 1010; *see also* CRC 3.1110(a); *see also People v. American Surety Ins. Co*. (1999) 75 Cal.App.4th 719, 726. The court cannot grant different relief, or relief on different grounds, than stated in the notice of motion. *See People v. American Surety Ins. Co*., *supra*, 75 Cal.App.4th at 726; *see also Luri v. Greenwald* (2003) 107 Cal.App.4th 1119, 1125.

EXHIBIT D
TO REQUEST FOR JUDICIAL NOTICE

Filed 4/1/20 Certified for Publication 4/24/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LORIK MIKHAEILPOOR,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC, et al.,<br><br>Defendants and Respondents. | B293987<br><br>(Los Angeles County Super. Ct. No. BC611197) |

APPEAL from an order of the Superior Court of Los Angeles County. Randolph M. Hammock, Judge. Affirmed.

---

Rosner, Barry & Babbitt, Hallen D. Rosner and Arlyn L. Escalante for Plaintiff and Appellant.

Morgan, Lewis & Bockius, Thomas M. Peterson and Mark W. Allen for Defendants and Respondents.

---

Lorik Mikhaeilpoor (Mikhaeilpoor) appeals from the trial court's order awarding her attorney fees following the trial of her action against BMW of North America LLC and Finchey Corporation of California (collectively, BMW) under the Song-Beverly Consumer Warranty Act (the Song-Beverly Act). (Civ. Code, § 1790 et seq.)[1] Mikhaeilpoor sued BMW after she purchased a defective 2013 BMW 328i that BMW was unable to repair.

## FACTUAL AND PROCEDURAL SUMMARY

### A. *Mikhaeilpoor's Complaint*

On February 22, 2016, Mikhaeilpoor sued BMW and Finchey Corporation of California (erroneously named in the complaint as Pacific BMW), an auto dealership, asserting causes of action under the Song-Beverly Act stemming from her September 13, 2014 lease of the 2013 BMW 328i for which BMW had issued a warranty. Mikhaeilpoor alleged that defendants: (1) failed to promptly replace her car or make restitution, in violation of section 1793.2, subdivisions (a)(2) and (d)(1); (2) failed to commence repairs aimed at conforming the car to its warranty, in violation of section 1793.2, subdivision (b); (3) failed to make available service and repair facilities (including parts and literature) sufficient to effectuate repairs, in violation of section 1793.2, subdivision (a)(3); (4) breached the express warranty, as defined in section 1791.2, subdivision (a); and (5) breached the implied warranty of merchantability, as defined in section 1791.1. Plaintiff's complaint sought restitution, an award of actual damages, a civil penalty of two times actual damages and attorney fees and costs.

---

[1] Unless otherwise specified, subsequent statutory references are to the Civil Code.

### B. *The Trial*

The trial commenced on February 21, 2018, and spanned six days. On February 28, 2018, the jury returned a special verdict in favor of Mikhaeilpoor. The jury awarded $35,805.08, comprised of $17,902.54 in compensatory damages and $17,902.54 in civil penalties.

### C. *Mikhaeilpoor's Motion for Attorney Fees*

On June 8, 2018, Mikhaeilpoor filed a motion for attorney fees pursuant to section 1794, subdivision (d), seeking $344,639. This figure consisted of $226,426, plus a 0.5 multiplier enhancement (totaling $113,213), and $5,000 for addressing the attorney fee resolution process.

The fee motion was accompanied by declarations from Payam Shahian, the managing attorney for Mikhaeilpoor's trial counsel, and Christine Haw, lead trial counsel. Shahian's declaration contained a bevy of information about his credentials and experience in unrelated Song-Beverly Act cases where his clients were awarded fees. Shahian's declaration also included 18 exhibits comprised of minute orders and notices of rulings on fee motions in unrelated cases; this despite the fact that no fees were billed for services by Shahian. Shahian's declaration also identified 10 attorneys who worked on this case along with their proffered billing information: Gregory Yu ($495 per hour), Jacob Cutler ($385 per hour in 2016, $395 per hour in 2017, and $410 per hour in 2018), Benjamin Beck ($400 per hour), Christine Haw ($365 per hour in 2017 and $375 per hour in 2018), Eleazar Kim ($350 per hour in 2017 and $370 hour in 2018), Yoon Kim (former attorney) ($365 per hour), Michael Robinson (former attorney) ($595 per hour), Heather Rodriguez (former attorney) ($325 per hour), Carey Wood ($370 per hour in 2017 and $375 per hour in

2018), Armig Khodanian (former attorney) ($325 per hour). Shahian's declaration also attached a copy of the billing records for Mikhaeilpoor's trial counsel.

The fee motion was opposed because: the billing records vastly overstated the work performed; the hourly rates were excessive; and an 0.5 multiplier adjustment was unwarranted. The defense argued that fees should be reduced by at least $83,206.05, and the proffered hourly billing rates of $325 to $595 were not based on market value.

Mikhaeilpoor replied, defending the amounts claimed. Before hearing the motion, the trial court issued a tentative ruling awarding $94,864 in attorney fees: $95,900 less an offsetting amount owed to defendants.

The court heard the motion on July 31, 2018. During argument, Judge Hammock explained that he "went through all the bills" and was "aghast" that counsel sought $343,000 in fees. He "saw the motions, the discovery motion," and "the motion for terminating sanctions, which was much ado about nothing." He found before him "a very simple case, straightforward trial," and "not a complicated case."

In assessing fees, the court "looked at all the bills" and then "calculated what [it] thought was reasonable." The court understood that it had the "ability to exercise [its] sound discretion," but could not "do it arbitrarily." The court emphasized that its analysis was not based on limiting plaintiff's fees to a proportion of the trial recovery; the court "recognize[d] that even though [the recovery] was [$]17,000, doubled to 34, this could justify a large attorney fee award." Also, the court did not take into account whether plaintiff should have accepted a Code of Civil Procedure section 998 offer.

The court found the requested fee amount "was just not reasonable." The court "went through the bill and [it] decided what

[it] felt was a reasonable amount of hours for a reasonably experienced attorney, in similar circumstances, to do the tasks that [plaintiff's trial counsel] claim to have done. . . . [I]t added up to 225 hours." The court decided that $350 "is a reasonable hourly rate for the services that were done."

During argument, plaintiff's counsel made two main arguments. First, counsel argued the court could not reduce plaintiff's requested fee amount by more than the $83,206.05 reduction because that would constitute entertaining "objections not raised by [defendants]." Second, counsel argued that defendants had the burden to prove grounds for a fee reduction. The court took the matter under submission in order to review the billing records again. Ultimately, the court found that $95,900 was the reasonable amount of attorney fees for work performed on behalf of Mikhaeilpoor. After offsetting certain fees and costs that had been awarded to defendants, the net amount of awarded fees totaled $94,864.

## STANDARD OF REVIEW

An award of attorney fees under the Song-Beverly Act is reviewed for abuse of discretion. (*Goglin v. BMW of North America, LLC* (2016) 4 Cal.App.5th 462, 470 (*Goglin*).) The reviewing court presumes that the trial court's award is correct and infers that a request for fees is inflated when the trial court substantially reduces the requested amount. (*Etcheson v. FCA US LLC* (2018) 30 Cal.App.5th 831, 840.) These rules apply because the experienced trial judge is best positioned to evaluate the professional services rendered in his or her courtroom. (*Ibid.*, citing *Goglin*, *supra*, 4 Cal.App.5th at pp. 470–471.) The trial court's decision must not be disturbed " 'unless [the Court of Appeal is] convinced that it is clearly wrong, meaning that it is an abuse of discretion.' " (*Graciano v. Robinson Ford Sales, Inc.*

(2006) 144 Cal.App.4th 140, 148 (*Graciano*), citing *In re Vitamin Cases* (2003) 110 Cal.App.4th 1041, 1052.) Accordingly, this court's review of an order awarding attorney fees "must be highly deferential to the views of the trial court." (*Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1239.) " 'The only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion or prejudice influenced the determination.' " (*In re Tobacco Cases I* (2013) 216 Cal.App.4th 570, 587.)

In particular, "the lodestar method vests the trial court with the discretion to decide which of the hours expended by the attorneys were 'reasonably spent' on the litigation" (*Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437, 449 (*Meister*)), and to determine the hourly rates that should be used in the lodestar calculus. (*569 E. County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 436-437.) The methodology embodied in this language is consistent with California's lodestar adjustment method of calculating attorney fees. (See *Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 818 (*Robertson*).) As the plain wording of section 1794, subdivision (d) makes clear, the trial court is "to base the fee award upon actual time expended on the case, as long as such fees are *reasonably* incurred—both from the standpoint of time spent and the amount charged." (*Robertson*, *supra*, at p. 817.) In the case of contingency fee arrangements, "a prevailing buyer . . . is entitled to an award of *reasonable* attorney fees for time *reasonably expended by his or her attorneys*." (*Nightingale v. Hyundai Motor America* (1994) 31 Cal.App.4th 99, 105, fn. 6 (*Nightingale*), italics added.)

Under the lodestar adjustment methodology, the trial court must initially determine the actual time expended and then "ascertain whether under all the circumstances of the case the

amount of actual time expended and the monetary charge being made for the time expended are reasonable." (*Nightingale*, *supra*, 31 Cal.App.4th at p. 104.) Factors to be considered include, but are not limited to, the complexity of the case and procedural demands, the attorney skill exhibited and the results achieved. (*Ibid.*) The prevailing party and fee applicant bears "the burden of showing that the fees incurred were . . . 'reasonably necessary to the conduct of the litigation,' and were 'reasonable in amount.' " (*Levy v. Toyota Motor Sales, U.S.A., Inc.* (1992) 4 Cal.App.4th 807, 816; see *Corbett v. Hayward Dodge, Inc.* (2004) 119 Cal.App.4th 915, 926 ["[c]ourts have uniformly held that the party moving for statutory attorney fees or sanctions has the burden of proof"].) It follows that if the prevailing party fails to meet this burden, and the court finds the time expended or amount charged is not reasonable under the circumstances, "then the court must take this into account and award attorney fees in a lesser amount." (*Nightingale*, *supra*, 31 Cal.App.4th at p. 104.)

The amount of attorney fees awarded pursuant to the lodestar adjustment method may be increased or decreased. Such an adjustment is commonly referred to as a "fee enhancement" or "multiplier." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 (*Ketchum*).) The trial court is neither foreclosed from, nor required to, award a multiplier. (See *Montgomery v. Bio-Med Specialties, Inc.* (1986) 183 Cal.App.3d 1292, 1297 ["That figure *may* then be increased or reduced by the application of a multiplier after the court has taken into consideration other factors concerning the lawsuit"], citing *Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 321–324 (*Press*); see also *Rey v. Madera Unified School Dist.* (2012) 203 Cal.App.4th 1223, 1242 ["the trial court is not required to include a fee enhancement for exceptional skill, novelty of the questions involved, or other factors. Rather, applying a multiplier is discretionary."].) The Supreme Court has "set forth a number of

factors the trial court may consider in adjusting the lodestar figure. These include: '(1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; [and] (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award.' " (*Press, supra,* at p. 322, fn. 12, italics omitted.)

Mikhaeilpoor argues that the trial court's ruling must be reversed because the court acted arbitrarily and failed to utilize the lodestar adjustment method to calculate reasonable attorney fees. The record belies this assertion.

In finding that $95,900 was the reasonable amount of attorney fees in this case, the trial court expressly invoked the lodestar method. Despite the trial court's clarity, Mikhaeilpoor mischaracterizes the analysis the court employed in order to create the illusion of error where there is none.

Mikhaeilpoor claims that the trial court improperly applied "across-the-board" percentage reductions in the fees claimed because it found that only 274 of plaintiff's claimed 595 hours of work were reasonably incurred and that a reasonable hourly rate for these reduced hours was $350 per hour. But the record, viewed in the light most favorable to the trial court's decision, does not show that the court made any "across-the-board" percentage reductions. Thus, plaintiff's reliance on the decision in *Kerkeles v. City of San Jose* (2015) 243 Cal.App.4th 88 (*Kerkeles*) and *Mountjoy v. Bank of America, N.A.* (2016) 245 Cal.App.4th 266 (*Mountjoy*) is misplaced.

*Kerkeles* concerned an appeal from an order awarding a plaintiff a fraction of the fees he requested following the settlement of his civil rights case. (See *Kerkeles*, *supra*, 243 Cal.App.4th at p. 92.) The plaintiff filed a motion seeking $1,448,397 in fees and

$75,255 in costs under section 1988 of title 42 of the United States Code and Code of Civil Procedure section 1021.5. (*Kerkeles*, *supra*, at p. 94.) This figure was based on 2,419.9 in attorney hours, with billable rates ranging from $425 to $650 per hour. (*Ibid.*) Plaintiff also requested a 1.5 multiplier to the lodestar amount. (*Ibid.*) The total amount requested was $2,350,848. (*Ibid.*) In response, defense counsel urged "a 50 percent reduction of the *total* lodestar amount." (*Id.* at pp. 95–96.) The trial court calculated the lodestar amount by multiplying the hourly rates by the full number of hours claimed, reaching a total of $873,615. The court *then reduced the total lodestar by 50 percent,* yielding $436,807.50 in attorney fees. (*Id.* at p. 97.)

In reversing, the appellate court deemed inadequate the trial court's explanation for its fee reduction. (*Kerkeles*, *supra*, 243 Cal.App.4th at pp. 101–102.) The Court of Appeal noted that while trial courts may make " 'across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure,' " they must set forth a " 'concise but clear' explanation of reasons for choosing a given percentage reduction." (*Id.* at p. 102.) In lieu of that, the trial court in *Kerkeles* had simply explained that the plaintiff's attorneys "expended far more time than a reasonable attorney could ever bill a paying client for." (*Id.* at p. 101.) Such reasoning did "not meet the federal criterion of a clear and specific explanation sufficient for meaningful appellate review." (*Id.* at p. 104.)

Similarly, in *Mountjoy,* the trial court awarded $59,334.60 in fees after the moving party sought $308,425, based on 760.70 hours of work billed at hourly rates ranging from $200 to $450. (*Mountjoy, supra*, 245 Cal.App.4th at p. 269.) In reducing the fees sought, the trial court explained: " 'Approximately half of [the Mountjoys'] pleading[s] amounted to unnecessary general legal argument warranting a reduction in the time it took to prepare that filing.

Approximately half of [the] "facts" [the Mountjoys] crafted in [o]pposition to the summary judgment motion . . . were improper. Perhaps most critically, well over 70% of the billing entries fall into one or more of the following categories: prohibitively vague "block billing," excessive time spent on the stated task (including but not limited to drafting the complaint and opposition to summary judgment motion and document review tasks discussed above), double billing where two attorneys completed the same task, attorney fees for non-attorney work, fees for filings that did not actually occur in this case, and fees for otherwise unreasonable tasks. [¶] In light of the foregoing and the other various reasons stated in [d]efendants' [o]pposition, the [c]ourt in its discretion reduces [the Mountjoys'] requested "hours worked" by 70% . . . to a more reasonable total of 228.21.' " (*Id.* at pp. 270–271.)

The Court of Appeal reversed, explaining that the trial court "determined that because well over 70 percent of the billing entries suffered from one or more flaws, it was appropriate to simply reduce the total hours claimed by 70 percent." (*Mountjoy*, *supra*, 245 Cal.App.4th at p. 281.) This approach was flawed because there did not appear to be any "reasonable basis for the conclusion that the total hours included in the 70 percent-plus time entries that were flawed in one or more ways was even reasonably close to 70 percent of the total time claimed." (*Ibid.*) For example, the flawed time entries may have only amounted to 50 percent of the total hours claimed; it was unclear whether the number of flawed billing entries were equivalent to the number of flawed hours. (*Ibid.*)

In contrast to *Kerkeles* and *Mountjoy,* the court here did not make an "across-the-board" percentage reduction of the attorney fees claimed. Rather, the court explained that its reduction resulted because the fees claimed "include[ed] dual billing of attorneys when the work of only one (at times) was reasonably

required" and trial counsel spent time on tasks that "should not have required anything more than [a] slight factual modification to [an] existing boilerplate." Plaintiff's counsel spent an unreasonably excessive amount of time dealing with this non-complex case. Thus, the trial court did not apply an arbitrary percentage (as in *Kerkeles)* or use flawed logic (as in *Mountjoy).* To the contrary, the court "went through the bill" multiple times and "decided what [it] felt was a reasonable amount of hours for a reasonably experienced attorney, in similar circumstances, to do the tasks that they claim to have done. . . . [I]t added up to 225 hours."

Dissatisfied with this explanation, Mikhaeilpoor questions how the trial court decided on the billing entries subject to reduction. Plaintiff would impose on the trial court the requirement of detailed explanatory orders. But this very same argument was rejected in *Mountjoy,* where the plaintiff faulted the court's explanation of its fee reduction because it " 'did not break out how many hours it thought were devoted to double billing the same tasks, work on non-attorney tasks, excessive billing for working on the complaint or summary judgment opposition, or work on documents that were not filed.' " (*Mountjoy, supra,* 245 Cal.App.4th at p. 280.)

Mikhaeilpoor also relies on *Moreno v. City of Sacramento* (9th Cir. 2008) 534 F.3d 1106 (*Moreno*) to support her claim that the trial court inadequately explained "which tasks were cut or reduced and why." *Moreno*, however, is not binding on this court and it is distinguishable. (*Wagner v. Apex Marine Ship Management Corp.* (2000) 83 Cal.App.4th 1444, 1451 [indicating that federal decisions are persuasive rather than binding authority].) In *Moreno,* the plaintiff prevailed in a federal civil rights action and the district court imposed percentage reductions on plaintiff's requested fees. *(Moreno, supra*, 534 F.3d

at pp. 1112-1116.) The Ninth Circuit Court of Appeals reversed. The federal district court did not identify those fees it thought duplicative or why it cut the costs claimed for trial preparation. (*Ibid.)* But Moreno is not based on principles applied in California, where trial courts are not required to state "each charge they find to be reasonable or unreasonable, necessary or unnecessary. . . . A reduced award might be fully justified by a general observation that an attorney over[-]litigated a case." (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 101; see also *Ketchum, supra,* 24 Cal.4th at p. 1140 ["The superior court was not required to issue a statement of decision with regard to the fee award."].) This view was recently reaffirmed in *Morris v. Hyundai Motor America* (2019) 41 Cal.App.5th 24, 37, footnote 6 (*Morris*), where the court explained that such a heightened standard of requiring courts to explain fee determinations is not appropriate "for appellate review of fee awards under the Song-Beverly Act." (*Ibid.*)

Mikhaeilpoor claims the trial court improperly tied the fee award to plaintiff's modest amount of recovered damages. But the trial court disclaimed tying the amount of fees to the damages and the record, viewed in the light most favorable to the trial court, does not show that the court tied "the fee award to some proportion" of the damages award. (*Warren v. Kia Motors America, Inc.* (2018) 30 Cal.App.5th 24, 37 (*Warren*).)

"[I]t is inappropriate and an abuse of a trial court's discretion to tie an attorney fee award to the amount of the prevailing [buyer's] damages or recovery in a Song-Beverly Act action, or pursuant to another consumer protection statute with a mandatory fee-shifting provision." (*Warren*, *supra*, 30 Cal.App.5th at p. 37.) If the reasons for the reduction "include tying the fee award to some proportion of the buyer's damages recovery, the court abuses its discretion." (*Ibid.*) But the two cases plaintiff invokes, *Graciano*,

*supra*, 144 Cal.App.4th at page 140 and *Warren*, *supra*, 30 Cal.App.5th at page 37, help demonstrate that the court here committed no error.

*Graciano* concerned a plaintiff's appeal from an order awarding her attorney fees following her post-verdict settlement with the defendant. (*Graciano*, *supra*, 14 Cal.App.4th at p. 145.) The trial court awarded $27,570; $235,000 in fees had been requested. (*Ibid.*) The trial court set the reasonable hourly rate at $250 per hour, which was based on a local rule setting hourly rates for expert witnesses, and applied that rate to the 367.6 hours of legal services expended by the plaintiff's attorneys. (*Id.* at p. 148.) After calculating the lodestar at $91,900, the court applied several multipliers, including a .3 negative multiplier " ' "to ensure the fee awarded is within the range of fees freely negotiated in the legal market place." ' " (*Ibid.*) As relevant here, the trial court explicitly tied its fee award to the plaintiff's damages recovery, reasoning: " '[T]he settlement amount for the [p]laintiff was $45,000 plus whatever fees, if any, the court might award. It is not uncommon for contingent fee agreements to require [p]laintiff to pay forty percent (more or less) of the recovery through trial to his/her counsel. If $45,000 represents [p]laintiff's sixty percent portion of the total settlement, then the forty percent fee portion, would be $30,000 ($75,000 x .40). In order to adjust the lodestar amount of $91,900 "to ensure the fee awarded is within the range of fees freely negotiated in the legal market place[,"] a ".30" factor should be applied. $91,900 times 3 yields $27,570, which amount is within the market place range of fees.' " (*Id.* at p. 162.) Under this rationale, the Court of Appeal perceived an improper downward adjustment based on the trial court's notion of an appropriate contingent fee percentage. (*Id.* at p. 164.)

In *Warren*, the trial court applied a 33 percent negative multiplier to plaintiff's requested lodestar fees. (*Warren*, *supra*,

30 Cal.App.5th at p. 24.) The court noted " 'a disconnect' between the verdict amount of '$17,000' and the over $500,000 in requested attorney fees." (*Id.* at p. 33.) The appellate court concluded that the negative multiplier was applied "with at least the partial goal of arriving at an attorney fee award that was roughly proportional to or more in line with [the plaintiff's] modest $17,455.57 damages award." (*Id.* at p. 39.)

Here by contrast, the trial court did not expressly or implicitly base any portion of its fee calculation on plaintiff's damage recovery. Unlike the situation in *Graciano*, the trial court here did not calculate the amount of fees using a methodology that ensured the fee and damages awards were proportional; accorded with a market-rate contingency agreement, or created a relationship to the damages awarded. Instead, the trial court "went through the bill and [it] decided what [it] felt was a reasonable amount of hours for a reasonably experienced attorney, in similar circumstances, to do the tasks that [plaintiff's trial counsel] claim to have done. . . . [I]t added up to 225 hours."

*Warren* is similarly distinguishable. Here, unlike in Warren, the trial court was concerned because the $344,639 was shockingly unreasonable, *irrespective of the damages awarded.* And, of course, the court here unequivocally disclaimed tying the fee award to the verdict amount because it "recognize[d] that even though [the recovery] was [$]17,000 doubled to 34, this could justify a large attorney fee award."

Also, instructive here is *Morris, supra*, 41 Cal.App.5th at page 24, where the court affirmed an order reducing requested fees by more than 40 percent in a Song-Beverly Act case. In *Morris,* the trial court reduced plaintiff's requested fees by 42 percent—from $191,688.75 to $73,864. On appeal, plaintiff argued—as Mikhaeilpoor does here—that the "trial court engaged in a prohibited proportionality analysis in setting the attorney fee

award." (*Id.* at p. 35.) To support that claim, the plaintiff relied on selective portions of the hearing transcript where the trial judge stated, " 'So this is [a request for] $192,000 for a case that you settled for $85,000 and didn't go to trial. Don't you think that just on its face, that's a little much.' " (*Ibid.*) According to the plaintiff, the trial court "slashed the requested award by more than 42 percent, to $73,864, to render the award 'more in proportion to the $85,000 damages.' " (*Ibid.*)

The Court of Appeal disagreed, explaining that the trial court "did not suggest in any respect that the court reduced the attorney fee award based on the size of the settlement award." (*Morris*, *supra*, 41 Cal.App.5th at p. 37.) To the contrary, the court "indicated a fee reduction was warranted because it was unreasonable to have so many lawyers staffing a [Song-Beverly Act] case that did not present complex or unique issues, did not involve discovery motions, and did not go to trial." (*Ibid.*)

Here, as in *Morris,* there is no indication that the trial court reduced fees based on the amount of damages awarded to plaintiff. Rather, the court said a reduction of the requested fees was warranted because: Plaintiff sought fees that "include[d] dual billing of attorneys when the work of only one (at times) was reasonably required"; her trial counsel spent time working on tasks that "should not have required anything more than [a] slight factual modification to [an] existing boilerplate"; and—overall—an unreasonably excessive amount of time was spent on a noncomplex matter. Additionally, the trial court "went through the bill and [it] decided what [it] felt was a reasonable amount of hours for a reasonably experienced attorney, in similar circumstances, to do the tasks that [plaintiff's trial counsel] claim to have done. . . . [I]t added up to 225 hours." The court did not engage in any proportionality analysis when it determined that $95,900 was the reasonable amount of attorney fees for the work performed.

Mikhaeilpoor claims the trial court based its fee award on an improper impressionistic basis.

In *Morris*, *supra*, 41 Cal.App.5th at page 37, the trial court stated during a fee motion hearing that the total proposed fee sought by the plaintiff was " 'a little much' considering the case settled for $85,000 and did not go to trial." (*Ibid.*) On appeal, plaintiff argued the court's statement "betrayed that at least one of the court's intentions in reducing the fee award was to bring it more in line with the settlement amount." (*Ibid.*) *Morris* rejected the plaintiff's argument that such trial court statements disclosed an alternate, prohibited motive for reducing plaintiff's proposed attorney fees.

Morris contends that, as in *Warren*, the trial court's comments during the hearing—suggesting that the total proposed fee was "a little much" considering the case settled for $85,000 and did not go to trial—betrayed that at least one of the court's intentions in reducing the fee award was to bring it more in line with the settlement amount. Given the court's clear expression in its final order of its reasons for the reductions, we will not speculate, based on a stray remark the court made at the hearing, that it had other, prohibited reasons that would require reversal. (See *Key v. Tyler* (2019) 34 Cal.App.5th 505, 539, fn. 16 [holding the court's "oral comments were not final findings and cannot impeach the court's subsequent written ruling"]; *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 633 ["a judge's comments in oral argument may never be used to impeach the final order, however valuable to illustrate the court's theory they might be under some circumstances"].)

Mikhaeilpoor contends that the trial court impermissibly reduced fees below the level defendants proposed. Plaintiff argues "[a]ny objections to the fees and rates requested not made by BMW

should have been deemed waived by the trial court." This argument is meritless.

At the outset, defense counsel did not limit its request to reduce plaintiff's requested fees by only $83,206.05 as Mikhaeilpoor erroneously represents. Rather, defendants argued that plaintiff's fees should be reduced by *at least* $83,206.05. As such, Mikhaeilpoor's argument that the trial court reduced her fees below the level defendants proposed is based on a false premise.

To support its position that the trial court cannot reduce fees absent—or below the non-moving party's specific objection, plaintiff cites *Blum v. Stenson* (1984) 465 U.S. 886, 892, fn. 5, a federal case concerning fees in a federal civil rights action. In *Blum*, the defendant waived its challenge to a district court determination of reasonable hours billed by failing to submit any evidence challenging the accuracy and reasonableness of the hours charged. (*Ibid*.) In contrast to *Blum*, defendants here are not challenging the trial court's decision but showing it was not an abuse of discretion. And defendants did not waive any challenge to the fee award. Rather, defendants challenged fees in the trial court on grounds the trial court found applicable.

The extent of a court's discretion to unilaterally reduce fees is also apparent in *Morris*. There, appellant argued that fees were arbitrarily reduced in those circumstances where particular fee amounts claimed were not the subject of defense objections. (*Morris*, *supra*, 41 Cal.App.5th at pp. 38–39.) Notwithstanding this argument, *Morris* was "satisfied that the trial court did not abuse its broad discretion to determine the reasonable value of the professional services performed by the [appellant's] attorneys." (*Id*. at p. 40.)

Mikhaeilpoor also claims that the trial court abused its discretion by failing to award a multiplier. The argument rests on some of the same unmeritorious arguments advanced with

regard to the trial court's reduced lodestar award. There was no abuse of discretion.

While the court's rationale for the lodestar reduction also influenced the denial of a multiplier, the court went further as to the multiplier issue, emphasizing that this was "not a complicated case," and the "request for a multiplier was specious." These findings weigh on the issue of the " 'novelty and difficulty of the questions involved,' " which is a factor that trial courts may consider when a multiplier is requested. (*Press*, *supra*, 34 Cal.3d at p. 322, fn. 12.) This factor is separate from the trial court's finding that plaintiff's counsel litigated the case inefficiently. Moreover, even though the trial court did not specifically mention other factors open to consideration when a multiplier is under consideration, this court must presume that the trial court considered all factors in reaching its decision, "even though the court may not have mentioned or discussed them in its written ruling." (*Mountjoy*, *supra*, 245 Cal.App.4th at p. 277.)

Mikhaeilpoor argues that the attorney fee award is not supported by the evidence. This claim has no merit. The court has no authority to disturb the trial court's factual findings if they are supported by substantial evidence. (*Meister, supra,* 67 Cal.App.4th at p. 453.) Here, substantial evidence amply supports the trial court's fee award because the record demonstrates the relative simplicity of plaintiff's lawsuit and the inefficiency of her counsel's litigation activities.

The case concerned the simple issue of a purported engine defect in plaintiff's vehicle that was—in plaintiff's view—not fixed after multiple attempts. To prevail, plaintiff's attorneys were only required to establish that their client purchased the vehicle, that it had a written warranty, that the vehicle had a defect, and that the vehicle was not repaired or replaced after the manufacturer had a reasonable opportunity to do so. (CACI No. 3201.) Plaintiff

was under no obligation to establish the cause of the purported defect. (*Ibid.*; see *Oregel v. American Isuzu Motors, Inc.* (2001) 90 Cal.App.4th 1094, 1102, fn. 8 [rejecting manufacturer's claim that plaintiff buyer was required to prove cause of leak to establish remedy under the Song-Beverly Act].) What follows is the trial court's altogether warranted conclusion that this was a noncomplex case. The record shows that Mikhaeilpoor filed one discovery motion, propounded a single set of discovery, took three depositions (Jose Conde, defendants' person most qualified; and Luis Holguin, defendants' expert), and retained the services of a single expert, Dan Calef. These were modest litigation efforts.

Additionally, the record demonstrates the highly inefficient manner in which plaintiff litigated her case. Plaintiff's trial counsel claims "extensive experience with claims brought under the Song-Beverly [Act]." Payam Shahian, the senior attorney among plaintiff's trial counsel, supervises the other attorneys in his firm, but does not "materially" get involved "*unless they involve complex legal issues*, reach significant stages of litigation, or require [his] assistance." (Italics added.) Shahian did not bill time to this case, confirming the case did not involve complex legal issues. Yet, despite counsel's experience litigating "hundreds of automotive defect cases involving California's consumer protection statutes, including Song-Beverly," an astonishing array of 10 different attorneys litigated this case, with multiple attorneys staffed at different times. Further, counsel's billing entries demonstrate a lack of efficiency in litigating the case and a lack of clarity in tasks performed. This evidence supports the trial court's finding that plaintiff's counsel failed to act efficiently.

Similarly, plaintiff's lead counsel, Christine Haw, had experience with Song-Beverly Act claims. Plaintiff sought hourly rates of $365 and $375 for Haw, but acknowledged that similar or more experienced attorneys had previously been awarded hourly

billable rates of $345 and $350. As such, the trial court's award of a $350 hourly billable rate is supported by substantial evidence. Additionally, at the time of the hearing on the fee motion, Haw had been an attorney for approximately five years and had litigated "hundreds of automotive defect cases involving [the] Song-Beverly [Act]." Notwithstanding, the court reasonably found that Haw did not leverage her experience to produce efficient litigation. Haw personally billed more than 240 hours, and required the help of nine other attorneys at various points in the litigation.

Ultimately, the trial court was in the best position to evaluate the professional services rendered before it. (*Ketchum, supra*, 24 Cal.4th at p. 1132.) The court's decision is supported by substantial evidence. There was no abuse of discretion.

## DISPOSITION

The order awarding fees is affirmed. Respondents are awarded their costs on appeal.

WHITE, J.*

We concur.

ROTHSCHILD, P. J.

CHANEY, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 4/24/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LORIK MIKHAEILPOOR,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC, et al.,<br><br>Defendants and Respondents. | B293987<br><br>(Los Angeles County Super. Ct. No. BC611197)<br><br>CERTIFICATION AND ORDER FOR PUBLICATION |

THE COURT:

The opinion in the above-entitled matter filed on April 1, 2020, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

ROTHSCHILD, P. J. CHANEY, J. WHITE, J.*

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

EXHIBIT E
TO REQUEST FOR JUDICIAL NOTICE

BC137-90.2

Lehman Law Group
OCT 01 2018
RECEIVED

FILED
Superior Court of California
County of Los Angeles
SEP 21 2018
Sherri R. Carter, Executive Officer/Clerk
By Felipe Rojas, Deputy

# Final Ruling

Judge Randolph M. Hammock, Department 47

HEARING DATE: **July 31, 2018** VERDICT February 28, 2018

CASE: **Lorik Mikhaeilpoor v. BMW of North America, LLC, et al.**

CASE NO.: **BC611197**

---

## (1) MOTION FOR AN ORDER TO HAVE MEMORANDUM OF COSTS DEEMED TIMELY FILED;
## (2) MOTION TO TAX COSTS;
## (3) MOTION FOR PREJUDGMENT INTEREST;
## (4) MOTION FOR ATTORNEY'S FEES

---

**MOVING PARTY:**
(1) Plaintiff Lorik Mikhaeilpoor;
(2) Defendants BMW of North America, LLC and Pacific BMW;
(3) Plaintiff Lorik Mikhaeilpoor;
(4) Plaintiff Lorik Mikhaeilpoor

**RESPONDING PARTY(S):**
(1) Defendants BMW of North America, LLC and Pacific BMW;
(2) Plaintiff Lorik Mikhaeilpoor;
(3) Defendants BMW of North America, LLC and Pacific BMW;
(4) Defendants BMW of North America, LLC and Pacific BMW

**STATEMENT OF MATERIAL FACTS AND/OR PROCEEDINGS:**

Plaintiff alleges that the vehicle leased contains engine defects and Defendants have failed to repair the vehicle to conform to warranties after a reasonable number of opportunities.

Plaintiff moves for an order to have memorandum of costs deemed timely filed, as well as motions for prejudgment interest and for attorney's fees.

Defendant moves to tax costs.

**FINAL RULING:**

Plaintiff Lorik Mikhaeilpoor's motion for an order to deem memorandum of costs timely filed is GRANTED. Defendants' request that the Court order Plaintiff to pay Defendants' attorney's fees and costs associated with opposing this application pursuant to CCP § 473(b) is GRANTED IN PART.

Defendants BMW of North America, LLC and Pacific BMW's motion to tax costs is DENIED as to the entire memorandum of costs, DENIED as to Item 1; GRANTED as to Item 5 in the amount of $38.75; DENIED as to Item 8; GRANTED as to Item 11 in the amount of $2,772.23; GRANTED as to Item 12 in the amount of $65.52; and GRANTED as to Item 16 in the amount of $1,382.27.

Plaintiff's motion for prejudgment interest pursuant to Civil Code § 3287(a) or, in the alternative, Civil Code § 3287(b) is GRANTED IN PART. As explained infra, the total amount of prejudgment interest awarded is $4,335.78.

Plaintiff's motion for attorney's fees is GRANTED in total amount of $95,900.00 which the Court finds to be the reasonable amount of attorney's fees for work performed on behalf of Plaintiff in this entire case. Applying the offset of Defendants' attorney's fees and costs awarded herein, the total net amount of attorney's fees is $94,864.00.

**DISCUSSION:**

**Motion for Order To Deem Memorandum of Costs Timely Filed**

Plaintiff's Evidentiary Objections

Declaration of Erin Tallent

The Court declines to rule on Plaintiff's evidentiary objections to the Declaration of Erin Tallent in opposition to the motion, as the Court did not consider this Declaration in ruling on the motion.

Analysis

Plaintiff moves for an order to have memorandum of costs deemed timely filed.

(a) Claiming costs

(1) Trial costs. A prevailing party who claims costs must serve and file a memorandum of costs within 15 days after the date of service of the notice of entry of judgment or dismissal by the clerk under Code of Civil Procedure section 664.5 or the date of service of written notice of entry of judgment or dismissal, or within 180 days after entry of judgment, whichever is first. The memorandum of

costs must be verified by a statement of the party, attorney, or agent that to the best of his or her knowledge the items of cost are correct and were necessarily incurred in the case.

. . .

(b) Contesting costs

. . .

(3) Extensions of time The party claiming costs and the party contesting costs may agree to extend the time for serving and filing the cost memorandum and a motion to strike or tax costs. This agreement must be confirmed in writing, specify the extended date for service, and be filed with the clerk. In the absence of an agreement, the court may extend the times for serving and filing the cost memorandum or the notice of motion to strike or tax costs for a period not to exceed 30 days.

. . .

CRC Rule 3.1700(a).

The Declaration of Christine Haw indicates that the memorandum of costs was due May 10, 2018, that it was sent out for filing on April 25, 2018, but the attorney service employee did not file and serve Plaintiff's memorandum of costs. This was not discovered until shortly before the ex parte application for relief was filed on May 24, 2018. The memorandum of costs was sent out for filing and personal service on May 23, 2018. As such, the memorandum of costs was filed and served about 2 weeks after the deadline had passed.

"[T]ime limitations pertaining to a memorandum of costs are not jurisdictional." Haley v. Casa Del Rey Homeowners Assn. (2007) 153 Cal.App.4th 863, 880. In Cardinal Health 301, Inc. v. Tyco Electronics Corp. (2008) 169 Cal.App.4th 116, 155, the Court of Appeal found that the trial court had "implicitly" granted plaintiff a two-week extension to file the memorandum of costs, which rendered the memorandum of costs timely-filed.

In this case, though, the Plaintiff has not made such a request (implicit or otherwise) under CRC Rule 3.1700(a)(3). Plaintiff appears to rely solely upon the mandatory relief provisions of CCP § 473(b), based upon attorney's (or more specifically – the attorney service company's) "inadvertence," "mistake" and "oversight." See, Declaration of Christine Haw in Support of Plaintiff's Memorandum of Costs, para. 5. Accordingly, the requested relief is mandatory.[1]

The motion for an order to have Plaintiff's memorandum of costs deemed timely filed is GRANTED.

---

[1] Alternatively, if somehow the requested relief is discretionary, this Court exercises its sound discretion to grant the requested relief based upon the totality of the circumstances, including the fact that the Defendant has not persuasively demonstrated that it suffered undue prejudice from the untimely filing and service.

Defendant's request that the Court order Plaintiff to pay Defendants' attorney's fees and costs associated with opposing this application pursuant to CCP § 473(b) is GRANTED IN PART. The Court will award the Defendants' requested fees and costs, per the mandatory relief provisions of CCP § 473(b), as follows: (1) $1,018 in attorney's fees, plus $18 in parking costs in attending the ex parte; and (2) Plaintiff will not be awarded any fees or costs in preparing said ex parte application. The former shall be utilized as an offset for the net award of attorney's fees and costs, discussed infra.

**Motion to Tax Costs**

Plaintiff's Evidentiary Objections

Declaration of Erin Tallent

Nos. 1 - 21: OVERRULED.

Analysis

For the reasons discussed above, the request to strike the entire cost bill as untimely is DENIED.

The Song-Beverly Consumer Warranty Act provides for the recovery by a prevailing buyer of "the aggregate amount of costs and expenses . . . reasonably incurred by the buyer."

> (d) If the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action.

Civ. Code, § 1794(d).

> Following trial, Jensen submitted a cost bill which included expert witness fees in the amount of $2,527. The court denied expert witness fees on the ground **Code of Civil Procedure section 1033.5 does not provide for an award of such fees.** We independently review the trial court's interpretation of section 1794, subdivision (d) (9 Witkin, Cal. Procedure, *supra*, Appeal, § 241 and 242, pp. 246-247), and **conclude the court erred in denying Jensen's expert witness fees**.
>
> Code of Civil Procedure section 1033.5 defines items allowable as "costs." The statute expressly excludes "[f]ees of experts not ordered by the court" "*except when expressly authorized by law*." (Code Civ. Proc., § 1033.5, subd. (b)(1), italics added.)

Section 1794, subdivision (d), permits the prevailing buyer to recover both "costs" *and* "expenses." Examining the language of the statute (*Halbert's Lumber, Inc.* v. *Lucky Stores, Inc.*, *supra*, 6 Cal. App. 4th at p. 1238), **it is clear the Legislature intended the word "expenses" to cover items not included in the detailed statutory definition of "costs."** However, because the scope of the term "expenses" is uncertain, we turn to legislative history for clues about the Legislature's intent. (*Ibid.*)

The Legislature added the "costs and expenses" language to section 1794 in 1978. (Stats. 1978, ch. 991, § 10, p. 3065.) An analysis by the Assembly Committee on Labor, Employment, and Consumer Affairs states: "Indigent consumers are often discouraged from seeking legal redress due to court costs. The addition of awards of 'costs and expenses' by the court to the consumer to **cover such out-of-pocket expenses as filing fees, expert witness fees, marshall's fees, etc.**, should open the litigation process to everyone." (Assem. Com. on Labor, Employment & Consumer Affairs, Analysis of Assem. Bill No. 3374 (May 24, 1978) p. 2.)

In *Ripley* v. *Pappadopoulos* (1994) 23 Cal. App. 4th 1616 [28 Cal. Rptr. 2d 878], we stated that the "Legislature has reserved to itself the power to determine selectively the types of actions and circumstances in which expert witness fees should be recoverable as costs and such fees may not otherwise be recovered in a cost award." (*Id.* at p. 1625.) In this case, the Legislature amended section 1794 to provide for the recovery of "costs *and* expenses." The legislative history indicates the Legislature exercised its power to permit the recovery of expert witness fees by prevailing buyers under the Act and within the meaning of *Ripley*.

The trial court denied Jensen's request for expert witness fees based on the legal determination those fees were barred by Code of Civil Procedure section 1033.5. For this reason, we remand the case to permit the court to determine whether the amount of fees sought by Jensen were "**reasonably incurred by the buyer in connection with the commencement and prosecution of [this] action.**" (§ 1794, subd. (d).)

Jensen v. BMW of North America, Inc. (1995) 35 Cal.App.4th 112, 137-38 (bold emphasis added).

Here, Plaintiff alleges only Song-Beverly causes of action. Because Plaintiff obtain judgment of $35,805 in his favor, she is the prevailing buyer entitled to costs and *expenses*, reasonably incurred in connection with the commencement and prosecution of this action. Civil Code § 1794(d).

► Item 1 (Filing Fees).

Defendant seeks to tax $180 for improper and unnecessary filing fees.

Here, the Court finds that all filing and motion fees reflected in the Memorandum of Costs Worksheet for Item 1 and Attachment 1g were reasonably incurred "expenses" in connection with the commencement and prosecution of this action. These costs will be allowed.

The motion to strike Item 1 is DENIED.

▶ Item 5 (Service of Process).

Defendant seeks to tax $2,196.72 for service of documents other than process on defendant.

The Court finds that all services fees, including those for civil subpoenas and for the filing fees of the motion for prejudgment interest and motion for attorney's fees actually filed and to be heard concurrently with this motion, reflected in the Memorandum of Costs Worksheet for Item 5 and Attachment 5d were reasonably incurred "expenses" in connection with the commencement and prosecution of this action. However, the Court agrees with Defendant that the total amount of costs should be $2,157.97, not $2,196.72.

The motion to strike Item 5 is GRANTED in the amount of $38.75.

▶ Item 8 (Witness Fees).

Defendant seeks to tax $3,021.20 for "uncertain and unsubstantiated expert witness costs."

The Court finds that the expert fees, reflected in the Memorandum of Costs Worksheet for Item 8 (Dan Calef), and Exh. 6 to the Declaration of Jacob Cutler, were reasonably incurred "expenses" in connection with the commencement and prosecution of this action.

The motion to strike Item 8 is DENIED.

▶ Item 11 (Court reporter fees as established by statute).

Defendant seeks to tax $16,105.64 for transcripts of proceedings not ordered by the Court.[2] Here, although the expenses of transcripts are reasonable where incurred in connection with certain hearings on motions, the Court finds that fees for reporters/travel at ex partes and status conferences, and transcripts thereof, are not reasonable. See Memorandum of Costs Worksheet at 12 and Attachment 12c. As such, those expenses will be disallowed in the total amount of $2,772.23.

The motion to tax Item 11 is GRANTED in the amount of $2,772.23.

---

2 Since there was no discussion by either side on the potential impact of the recent decision in Burd v. Barkley Court Reporters, Inc. (11/29/17) 17 Cal.App.5th 1037, this Court will not address those issues.

► Item 12 (Models, enlargements, and photocopies of exhibits).

Defendant seeks to tax $1,840.59 for photocopies other than exhibits.

The Court finds that the expenses for copying, scanning, exhibits and binders, reflected in Attachment 11 to the Memorandum of Costs Worksheet were reasonably incurred in connection with the commencement and prosecution of this action, except for the costs of Copying and Printing Velo-Unbind and Rebinding ($18.01) and Copy/Print Electronic Bates Labeling; Doc Pro (2/252018)($47.51).

The motion to tax Item 12 is GRANTED in the amount of $65.52.

► Item 16 (Other).

Defendant seeks to tax $1,382.27 for travel expenses not allowed by statute; $376.99 for messenger costs not allowed by statute; $413.03 for overnight (FedEx) costs not allowed by statute; and $1,069.00 in improper miscellaneous costs.

The Court finds that it is not reasonable to recover costs for traveling to attend court hearings (as opposed to depositions, which are recoverable per CCP § 1033.5(a)(3)(C)). As such, $1,382.27 for travel costs to attend hearings in court will be disallowed. However, the Court finds that the other expenses incurred, reflected in Attachment 16 to the Memorandum of Costs Worksheet were reasonably incurred "expenses" in connection with the commencement and prosecution of this action.

The motion to tax Item No. 16 is GRANTED in the amount of $1,382.27.

**Motion for Prejudgment Interest**

Plaintiff moves for an award of prejudgment interest pursuant to Civil Code § 3287(a) in the amount of $17,775.72 or, alternatively, in the amount of $7,426.17 pursuant to Civil Code § 3287(b).

Civil Code § 3287 provides:

> (a) A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day, except when the debtor is prevented by law, or by the act of the creditor from paying the debt. . . .
>
> (b) Every person who is entitled under any judgment to receive damages **based upon a cause of action <u>in</u> contract**[3] where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed.

[3] This language appears to distinguish actions "in tort."

(Bold emphasis and underlining added.)

For purposes of Plaintiff's request for prejudgment interest as a matter of right pursuant to Civil Code § 3287(a), and after considering all of the arguments of counsel, both at the hearing and by means of the supplemental briefing on this issue, the Court agrees with Plaintiff that the damages *were certain or capable of being made certain by calculation* without a jury making factual findings as to damages, mileage offset and the civil penalty. This is based upon a simple fact: When the car was first presented for the repairs at issue in the lawsuit (i.e., September 13, 2014) the "damages" began under the Song-Beverly Act – per the jury's inherent findings and verdict. Accordingly, the "amount" of these damages (to wit, prejudgment interest) can easily be calculated from that time point by an arithmetical process to a certainty.

However, the court agrees with Defendant, that the Plaintiff's request is overstated, as a matter of law. Plaintiff incorrectly utilizes a "base damage" which include the civil penalties, instead of the adjusted and proper amount of $17,902.54.

Utilizing the proper base of $17,902.54, and utilizing a more appropriate interest rate of 7% per annum, the proper prejudgment interest to be awarded is $1,253.18 per calendar year (or $3.43 per calendar day). Hence, starting at 9/13/14 and ending at 3/1/18, the total amount of prejudgment interest is $4,335.78.

Accordingly, Plaintiff's request for prejudgment interest pursuant to Civil Code § 3287(a) is GRANTED IN PART to $4,335.78.

As for Plaintiff's request for $7,426.17 in prejudgment interest in the Court's discretion pursuant to Civil Code § 3287(b), the Court acknowledges that it appears that actions under the Song-Beverly Act are considered to be "in contract."

> In *Kwan v. Mercedes-Benz of North America, Inc.* (1994) 23 Cal. Cal. App. 4th 174, 188 [28 Cal. Rptr. 2d 371], the court construed section 1794 of the [Song-Beverly] Act, concluding its clear mandate "is that the compensatory damages recoverable for breach of the Act are those available to a buyer for a seller's breach of a sales contract." As to the statute's reference to California Uniform Commercial Code sections 2714 and 2715 regarding consequential damages, it construed those as damages normally accruing from breaches of contract.

Bishop v. Hyundai Motor Am. (1996) 44 Cal.App.4th 750, 755.

Nonetheless, the Court exercises its discretion not to award any prejudgment interest pursuant to Civil Code § 3287(b). To be blunt and frank: Plaintiff was extremely fortunate to recover what she did in judgment. An award of prejudgment interest would only add to the windfall she has already obtained by way of the judgment.

Plaintiff's request for prejudgment interest in the amount of $7,426.17 pursuant to Civil Code § 3287(b) is DENIED.

**Motion for Attorney's Fees**

Request for Judicial Notice

Plaintiff's request that the Court take judicial notice of orders and rulings in other cases is DENIED as irrelevant to this Court's decision. The Court need only take judicial notice of relevant materials. Mangini v. R.J. Reynolds Tobacco Co. (1994) 7 Cal.4th 1057, 1063. The Court may deny a request for judicial notice of material unnecessary to its decision. Rivera v. First DataBank, Inc. (2010) 187 Cal.App.4th 709, 713.

Defendant's Evidentiary Objections

Declaration of Payam Shahian

Nos. 1 – 5: OVERRULED.

Declaration of Christine Haw

Nos. 1 – 4: OVERRULED.

Plaintiff's Evidentiary Objections

Declaration of Erin Tallent

Nos. 1 – 61: OVERRULED.

Analysis

Plaintiff moves to recover attorney's fees in the total amount of $344,639.00, consisting of $226,426 in attorney's fees, a 0.50 multiplier enhancement ($113,213.00) on attorney's fees, and an additional $5,000 for Plaintiff's counsel to review Defendant's Opposition, draft the Reply brief, and attend the hearing on this motion.

Civil Code § 1794(d) provides:

> (d) If the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been **reasonably incurred** by the buyer in connection with the commencement and prosecution of such action.

(Bold emphasis added.)

Here, in light of the fact that Plaintiff recovered $35,805.08 ($17,902.54 in damages and $17,902.54 in civil penalties), Plaintiff is the prevailing buyer under the Song-Beverly Act.

The determination of reasonable amount of attorney fees is within the sound discretion of trial courts. PLCM Group v. Drexler (2000) 22 Cal.4th 1084, 1095; Akins v. Enterprise Rent-A-Car Co. (2000) 79 Cal. App. 4th 1127, 1134. "The determination of what constitutes a reasonable fee generally 'begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate....'" "[T]he lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award...." Graciano v. Robinson Ford Sales, Inc. (2006) 144 Cal.App.4th 140, 154. In setting the hourly rate for an attorney fees award, courts are entitled to consider the rate of "'fees customarily charged by that attorney and others in the community for similar work.'" Bihun v. AT&T Information Systems, Inc. (1993) 13 Cal. App. 4th 976, 997 (affirming rate of $450 per hour), overruled on other grounds by Lakin v. Watkins Associated Indus. (1993) 6 Cal. 4th 644, 664. The burden is on the party seeking attorney fees to prove reasonableness of the fees. Center for Biological Diversity v. County of San Bernardino (2010) 188 Cal. App. 4th 603, 615.

The Court has broad discretion in determining the amount of a reasonable attorney's fee award which will not be overturned absent a "manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence." Bernardi v. County of Monterey (2008) 167 Cal. App. 4th 1379, 1393-94. The Court need not explain its calculation of the amount of attorney's fees awarded in detail; identifying the factors considered in arriving at the amount will suffice. Ventura v. ABM Industries Inc. (2012) 212 Cal.App.4th 258, 274-75.

The Court finds that the hourly rates ranging from $325/hour to $595 an hour are reasonable in the community. See Shahian Decl., ¶¶ 24-44. However, the Court notes that attorneys who bills at that hourly rate should not need to research routine issue of law and should resort to boilerplate when it will serve the client's purposes.

The Court takes note of the relative absence of law and motion involved (only one motion to compel and a motion for terminating sanctions), and the fact that the issues involved in this case were applicable to other consumers' vehicles, thereby triggering economies of scale in terms of Plaintiff's counsel's efficiency in litigating this type of lemon law case. The Court acknowledges, however, that Plaintiffs' counsel prepared some discovery, which should not have required anything more than slight factual modification to existing boilerplate. Indeed, the Complaint only offers the barest detail specific to Plaintiff—the make, model and VIN of her vehicle, and a summary of the symptoms she encountered. All other allegations should have been cut-and-pasted from language already prepared for past or existing clients.

On the other hand, the Court acknowledges that considerable work was involved in trial preparation, as well as the trial itself.

The Court also agrees with Defendant's position set forth in the Opposition that the amounts billed are unreasonable, including dual billing of attorneys when the work of only one (at times) was reasonably required. However, the Court declines to adopt wholesale the amount of deductions proposed by Defendant.

In light of the foregoing, the Court finds that the lodestar amount of attorney's fees is $95,900.00, which includes the fees incurred in connection with bringing the instant motion. This was calculated by finding a total amount of 274 hours which were reasonably incurred to date, at the average rate of $350 per hour. The Court in its discretion declines to apply a multiplier, for the reasons previously stated. This was not a complicated case. Plaintiff was lucky, in this Court's opinion, to win anything. This Court will not compound the generosity of the jury.

On a final note, it is well established that a trial court has the discretion to deny a request for attorney's fees altogether, even though it may be required by law (as in this case), whenever the request for attorney's fees is grossly excessive and/or shocks the conscience of the court.

> "A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award *or deny one altogether*." (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 635 [186 Cal. Rptr. 754, 652 P.2d 985]; accord, *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1137 [104 Cal. Rptr. 2d 377, 17 P.3d 735].)

Chavez v. City of Los Angeles (2010) 47 Cal.4th 970, 990-991. (Emphasis added.)

Plaintiff's attorneys should be forewarned: This Court did seriously consider denying the motion for fees in its entirety, since the request of almost $350,000 was quite shocking and "unreasonably inflated."

This Court is aware of the substantial fees and costs which are incurred in bringing a case to trial before a jury. It is also aware of the pro-consumer rationale of the Song Beverly Act in liberally awarding such fees and costs. This recognition is certainly reflected in this Court's decisions as tot the requested costs and "expenses." However, the requested fees, costs and expenses must be *reasonable*. A request of almost $350,000 in fees for this particular case – which this Court has essentially handled from beginning to end – is simply unacceptable. Indeed, the request for a multiplier was specious.

Enough said.

Plaintiff's motion for attorney's fees is GRANTED in amount of $95,900.00 which the Court finds to be the reasonable amount of attorney's fees for work performed on behalf of Plaintiff in this case. Applying the offset of Defendants' attorney's fees and costs awarded herein, the total net amount of attorney's fees is $94,864.00.

Clerk to give notice.

IT IS SO ORDERED.

Dated: September 21, 2018

Randolph M. Hammock
Judge of the Superior Court

# PROOF OF SERVICE

I, Dolores M. Rivera, declare:

I am a citizen of the United States and employed in the City and County of San Francisco, California. I am over the age of eighteen years and not a party to the within entitled action. My business address is One Market, Spear Street Tower, San Francisco, CA 94105-1126.

On May 22, 2020, I served a copy of the within document(s):

- **DECLARATION OF GARRICK Y. CHAN IN SUPPORT OF DEFENDANT BMW OF NORTH AMERICA, LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY FEES, COSTS AND EXPENSES**

☒ **BY E-FILE**: I caused such documents to be transmitted by e-file with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Gregory Sogoyan, Esq.
Strategic Legal Practices, APC
1840 Century Park East, Ste 430
Los Angeles, CA 90067
Telephone: (310) 929-4900
E-mail:gsogoyan@slpattorney.com
emailservices@slpattorney.com

Michael H. Rosenstein, Esq.
Law Offices of Michael H. Rosenstein, LLC
10900 Wilshire Blvd., Suite 300
Los Angeles, CA 90024
Telephone: 310.286.0275
Email: mrosenstein@rose-lawoffice.com

Dara Tabesh, Esq.
EcoTech Law Group, P.C.
5 Third St. Ste. 700
San Francisco, CA 94103
Telephone: (415) 503-9164
E-mail:dara.tabesh@ecotechlaw.com
*Attorney for Plaintiff,*
*Frederick J. Jurosky*

Executed on May 22, 2020 at San Francisco, California.

I declare under penalty of perjury, under the laws of the State of California and the United States of America, that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Dolores M. Rivera