1
2
3
4
5
6
7
8        UNITED STATES DISTRICT COURT
9        SOUTHERN DISTRICT OF CALIFORNIA
10

11   FREDERICK J. JUROSKY,                    Case No.: 19cv706 JM (BGS)

12                              Plaintiff,

13   v.                                       **ORDER ON PLAINTIFF'S MOTION
                                              FOR ATTORNEYS' FEES, COSTS
14   BMW OF NORTH AMERICA, LLC,               AND EXPENSES**

15                              Defendant.

16

17

18        Plaintiff Frederick Jurosky moves the court, pursuant to California's Song-Beverly

19   Consumer Warranty Act ("the Song-Beverly Act"), CAL. CIV. CODE § 1794(d), to award

20   him $198,716.38 in attorneys' fees, costs, and expenses.  (Doc. No. 23-1.)  Also before the

21   court are the parties' cross motions to retax costs.  (Doc. Nos. 65, 66.)  The motions have

22   been briefed and the court finds them suitable for submission without oral argument in

23   accordance with Civil Local Rule 7.1(d)(1).  For the below reasons, the motions are

24   **GRANTED IN PART** and **DENIED IN PART**.

25   **I.      BACKGROUND**

26        On March 5, 2013, Plaintiff purchased a used 2010 BMW 750Li for $61,298.40.  As

27   a result of alleged engine, oil consumption, and electrical defects, Plaintiff took the vehicle

28

to the dealership multiple times for repairs.  BMW was unable to repair the vehicle and did not offer to buy back the vehicle.

On July 17, 2018, Plaintiff filed his Complaint against BMW, as well as the dealership,[1] in California Superior Court for the County of Sacramento.  Plaintiff alleged violations of the Song-Beverly Act, CAL. CIV. CODE § 1790-1795.8.  BMW filed a motion for change of venue on September 6, 2018.  On October 10, 2018, the motion for change of venue was granted and the case was transferred to San Diego County.  BMW filed a Notice of Removal to this court on April 17, 2019.  On April 20, 2020, Plaintiff accepted BMW's offer of judgment pursuant to Federal Rule of Civil Procedure 68.  (Doc. No. 50.)  Specifically, Plaintiff accepted judgment in his favor for $122,596.92, exclusive of recoverable attorneys' fees and costs, for BMW to repurchase the subject vehicle.  On April 23, 2020, judgment was entered in favor of Plaintiff.  (Doc. Nos. 51, 52.)  On May 7, 2020, Plaintiff filed the instant motion.  On June 5, 2020, the parties filed their cross motions to retax costs.  (Doc. Nos. 65, 66.)

## II.    LEGAL STANDARD

Under the Song-Beverly Act, a prevailing buyer "shall be allowed by the court to recover . . . . costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action."  CAL. CIV. CODE § 1794(d).  The court must determine "whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable." *Nightingale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99, 104 (1994).  "In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law."  *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007).

---

[1] The dealership was subsequently dismissed.

The lodestar method is the prevailing method for calculating attorneys' fees. *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 785, 818-19 (2006); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1135 (2001).  In calculating the lodestar, the court must "'make an initial determination of the actual time expended; and then . . . . ascertain whether under all the circumstances of the case the amount of the actual time expended and the monetary charge being made for the time expended are reasonable.'"  *Robertson*, 144 Cal. App. 4th at 817 (quoting *Nightingale*, 31 Cal. App. 4th at 104).  In determining the reasonableness of the lodestar, courts can consider the complexity of the case, procedural demands, the skill exhibited, and the results achieved.  *Id.*

The plaintiff bears the burden of demonstrating that the fees sought were allowable, reasonably necessary to the conduct of the litigation, and reasonable in amount. *Karapetian v. Kia Motors Am., Inc.*, 970 F. Supp. 2d 1032, 1036 (C.D. Cal. 2013).  If the reasonableness of fees is challenged, "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice."  *Premier Med. Mgmt. Sys. v. Cal. Ins. Guar. Assoc.*, 163 Cal. App. 4th at 550, 564 (2008).  In such cases, the opposing party has the burden to demonstrate the hours spent are duplicative or excessive.  *Id.* at 562, 564; *see also Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 101 (2009) ("The party opposing the fee award can be expected to identify the particular charges it considers objectionable").  Decisions by other courts regarding the reasonableness of the rate sought may also provide evidence to support a finding of reasonableness.  *See Widrig v. Apfel*, 140 F.3d 1207, 1210 (9th Cir. 1998).

## III.   DISCUSSION

As the prevailing party, Plaintiff is entitled to an award of attorneys' fees, costs, and expenses.  Billing records provided by Plaintiff show the $198,716.38 he requests consists of the following: (1) $106,703 in attorneys' fees for Strategic Legal Practices ("SLP"); (2) $5,390 in attorneys' fees for The Law Offices of Michael Rosenstein ("Rosenstein"); (3) $24,797.50 in attorneys' fees for EcoTech Law Group ("EcoTech"); (4) $7,914.20 in costs and expenses for SLP; (5) a 1.35 multiplier enhancement (or $47,911.68) on the

3

attorneys' fees; and (6) an additional $6,000 for Plaintiff's counsel to reply to Defendant's opposition to the instant motion.  (Doc. No. 56 at 2.)

### A.  Hourly Rates

Plaintiff seeks fees for attorneys at three different law firms.  Plaintiff requests $106,703 for work performed by 13 attorneys at SLP at rates between $350 and $550 per hour.  (Doc No. 56 at 2.)  The rates for each attorney at SLP are as follows:

| SLP ATTORNEY HOURLY RATES | | | | |
|---|---|---|---|---|
| Attorney Name | Position | 2019 Rate | 2020 Rate | Experience |
| Gregory Yu | Of counsel | $525 | $550 | graduated 2003 |
| Jacob Cutler | Associate | $460 | | admitted 2009 |
| Kyle Tracy | Associate | $445 | | admitted 2010 |
| Johnny Ogata | Associate | $425 | | admitted 2008 |
| Christine Haw | Associate | $410 | | admitted 2013 |
| Anh Nguyen | Not provided | $385 | | admitted 2012 |
| Natasha Bhushan | Associate | $385 | | admitted 2012 |
| Tionna Dolin | Not provided | $375 | | admitted 2014 |
| Carey Wood | Associate | $375 | $395 | admitted 2013 |
| Caitlin Scott | Associate | $365 | | admitted 2016 |
| Daniel Tai | Associate | $350 | | admitted 2015 |
| Gregory Sogoyan | Not provided | $350 | $385 | admitted 2017 |
| Yoel Hanohav | Associate | $350 | | admitted 2017 |

Plaintiff also requests $24,797.50 for 46 hours of work performed by Dana Tabish, of EcoTech, and $5,390 for 10.5 hours of work performed by two attorneys at Rosenstein. The rates for each attorney are as follows:

| OTHER ATTORNEY HOURLY RATES | | | | | | |
|---|---|---|---|---|---|---|
| Name | Firm | Position | Rate | Hours | Total | Experience |
| Tabesh | EcoTech | Not provided | $545 | 46* | $24,798 | admitted 2002 |
| Rosenstein | Rosenstein | Not provided | $600 | 7.7 | $4,620 | 25+ yrs. litigation |
| Martinez | Rosenstein | Associate | $275 | 2.8 | $770 | admitted 2015 |
| *Based on the court's calculation. | | | | | | |

In determining a reasonable hourly rate, the district court should consider: (1) the experience, reputation, and ability of the attorney; (2) the outcome of the proceedings; (3) customary fees; and (4) the novelty or difficulty of the question presented.  *Hiken v.*

4

*Dep't of Defense*, 836 F. 3d 1037, 1044 (9th Cir. 2016) (citing *Chalmers v. City of L.A.*, 796 F.2d 1205, 1211 (9th Cir. 1986)).  Additionally, district courts may "rely[ ] on their own knowledge of customary rates and their experience concerning reasonable and proper fees." *Ingram v. Oroudjian*, 647 F. 3d 925, 928 (9th Cir. 2011).  Plaintiff bears the burden of showing that "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (citation omitted).  "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  As a general rule, the forum district represents the relevant legal community.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

Here, Plaintiff cites multiple cases in this forum where the court approved hourly rates within the $350 and $550 range for attorneys with comparable years of experience. *See*, *e.g.*, *Holcomb v. BMW of N. Am., LLC*, Case No.: 18cv475 JM (BGS), 2020 WL 759285, at *4 (S.D. Cal. Feb. 14, 2020) (listing cases).  One court from the Central District recently approved the same or similar rates for almost all of the same attorneys Plaintiff used here.  *See Zargarian v. BMW of N. Am., LLC*, 442 F. Supp. 3d 1216, 1227 (C.D. Cal. 2020).  Plaintiff also submits declarations regarding the extensive experience of his attorneys handling Song-Beverly Act cases.[2]  (*See*, *e.g.*, Doc. No. 56-12 ¶ 4 (declaration of

---

[2] BMW objects to these declarations.  (*See* Doc. Nos. 61-7 (objecting to declaration of Payham Shahian); 61-8 (Jacob Cutler); 61-9 (Michael Rosenstein); 61-10 (Dara Tabesh).) As the court found in *Zargarian*, "[BMW] objects to almost every paragraph of these declarations with nothing more than stating 'Relevance' or 'Hearsay' and listing the corresponding Federal Rule of Evidence."  442 F. Supp. 3d at 1227.  Accordingly, BMW's evidentiary objections are OVERRULED "because they are without merit and 'are boilerplate and devoid of any specific argument or analysis as to why any particular exhibit or assertion in a declaration should be excluded.'"  *Id*. (citations omitted).

SLP's founding partner stating, "I have extensive experience with claims brought under the [Song-Beverly Act] both as a plaintiff and defense attorney, and I have litigated hundreds of automotive defect cases involving California's consumer protection statutes, including Song-Beverly.").)   This is sufficient to show the reasonableness of the SLP attorneys' hourly rates.

BMW argues that rates should be reduced based on the Wolters Kluwer "2018 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices" ("the Real Rate Report").  (Doc. No. 61 at 12-13.)  Based on this report, BMW argues that the rates should be $263 for partners and $200 for associates because those are the median rates for "general liability" attorneys, which includes attorneys handling "consumer related claims," in Los Angeles at firms with 50 attorneys or less.  (*Id.* at 13.)  Certainly, some district courts, including one in this forum, have lowered plaintiffs' attorneys' hourly rates based on the Real Rate Report.  *See Di Gioia v. Ford Motor Co.*, Case No. EDCV 18-1724 JGB (KKx), 2020 WL 1955311, at *2 (C.D. Cal. Apr. 1, 2020) (adjusting rates to $325 for partners and $225 for associates); *Arias v. Ford Motor Co*., Case No. EDCV 18-1928 PSG (SPx), 2020 WL 1940843, at *4 (C.D. Cal. Jan. 27, 2020) (same); *Aispuro v. Ford Motor Co.*, Case No.: 18-CV-2045 DMS (KSC), 2020 WL 4582677, at *4 (S.D. Cal. Aug. 10, 2020) (adjusting the rate to $350 for partners and $225 for associates); *Hernandez v. FCA US LLC*, Case No. CV 17-5452-GW(ASx), 2019 WL 2932637, at *3 (C.D. Cal. Jan. 4, 2019) (adjusting rates to $346.30 for partners and $257.92 for associates).

Other courts, however, have declined to adjust rates based on the Real Rate Report. *See Foulkrod v. Ford Motor Co.*, Case No.: 5:18-cv-02613 SJO (KKx), 2020 WL 2891989, at *3 (C.D. Cal. Mar. 31, 2020) (approving rates between $320 and $550 because this was in the range of the Real Rate Report for general litigation partners); *Nai Hung Li v. FCA US LLC*, Case No. 2:17-cv-06290-R-JEM, 2019 WL 6317769, at *2 (C.D. Cal. July 1, 2019) (approving rates between $250 and $550).  Furthermore, the cases in which the court decreased the hourly rate did not involve the attorneys who represented Plaintiff here.

Accordingly, the court declines to adjust Plaintiff's attorneys' hourly rates based on the Real Rate Report.

BMW also urges the court to follow *Morris v. Hyundai Motor Am.*, 41 Cal. App. 5th 24, 32, 40, (2019), *as modified* (Oct. 11, 2019), *review denied* (Jan. 2, 2020), in which the court found that the trial court did not abuse its discretion by reducing $650 rates to $500, $500 rates to $400, and associates' rates from $450, $375, and $350 to $300. The appellate court reasoned that "[t]he [trial] court reasonably could have reduced the rates based on its finding that the matter was not complex; that it did not go to trial; that the named partners were doing work that could have been done by lower-billing attorneys; and that all the attorneys were doing work that could have been done by paralegals." *Id.* at 41. The specific rates in the *Morris* case are not determinative here, however, because the appellate court did not discuss why the trial court reduced the rates, and BMW makes no attempt at explaining why the *Morris* case is more influential than the multiple other cases approving rates similar to those sought here. Accordingly, the court approves the hourly rates charged by Plaintiff's attorneys at the SLP firm. The reasonableness of rates and hours charged by Plaintiff's attorneys at EcoTech and Rosenstein are discussed below.

### B. Number of Attorneys and Hours Worked

Plaintiff argues this case actually and reasonably required a total of 297.6 hours of work by 16 different attorneys at three different law firms. BMW generally objects to the number of attorneys and firms that worked on this case. For the below reasons, the number of attorneys and hours worked is reasonable.

### 1. SLP Attorneys

Plaintiff claims that 13 attorneys from SLP spent 241.6 hours working on this case. (Doc. 56-28 at 11.) Although Plaintiff provides detailed and itemized records showing the time it took to complete each task throughout the litigation, Plaintiff does not provide a

///

///

///

breakdown of the time each one of the 13 attorneys spent on the case.[3]  Plaintiff also offers no explanation as to why this case required the attention of 13 attorneys at SLP.  As recognized by other courts, reliance on multiple attorneys necessarily requires each attorney to get "up-to-speed" on the case.  *See Luna v. FCA US LLC*, Case No. 2:17-cv-08272-ODW (RAOx), 2020 WL 491462, at *4 (C.D. Cal. Jan. 30, 2020) (imposing a 10% across-the-board cut because "[a]s a result of having twelve attorneys from two firms billing on this matter, the billing records are riddled with duplicative inter-office communications and entries reviewing prior filings and case materials"); *Base v. FCA US LLC*, Case No. 17-cv-01532-JCS, 2020 WL 363006, at *3 (N.D. Cal. Jan. 22, 2020) (noting that significant billings for meetings between attorneys was "one of the potential inefficiencies of using a large number of attorneys to staff a case"); *Durham v. FCA US LLC*, Case No.: 2:17-cv-00596-JLT, 2020 WL 243115, at *5 (E.D. Cal. Jan. 16, 2020) (noting a "significant amount of time spent on the preparation of internal memorandums and summaries for co-counsel").  Based on the above, the expertise and experience of Plaintiff's counsel, upon which Plaintiff relies to justify his attorneys' high rates, is therefore uncertain given that it took 13 of them, along with three attorneys from two outside firms, to handle this single unextraordinary case.  Other Song-Beverly Act cases, albeit ones settling prior to any significant discovery, have required far fewer attorneys.  *See Chavez v. Jaguar Land Rover N. Am., LLC*, Case No.: 18-cv-2811 W (JLB), 2020 WL 376209, at *2 (S.D. Cal. Jan. 23, 2020) (awarding fees to five attorneys at Plaintiffs' counsel's firm for a total of 43.6 hours of work); *Anderson v. BMW of N. Am., LLC*, Case No.: 18-CV-57-WVG, 2018 WL 2011006, at *2 (S.D. Cal. Apr. 30,

///

///

---

[3] Without a breakdown of the hours spent on the case by each attorney, it makes it far more difficult for the court to double check Plaintiff's math and evaluate the reasonableness of the amount of work Plaintiff's attorneys reportedly performed.

018) (awarding fees to one attorney for 40 hours of work).  At first blush, therefore, the amount of personnel and time SLP devoted to this case appears excessive.

As explained by Plaintiff, however, "[a]lthough there were 16 [total] time-billers in this case, only 2 billers, Mr. Yu, and Mr. Sogoyan accounted for about 148.9 hours of the total 241.6 hours expended by [SLP] in this case [which] represents about 62% of the time submitted by SLP by these two billers alone."  (Doc. No. 56-1 at 18 n.11.)  Other courts have not faulted the plaintiff for utilizing a large number of attorneys at multiple firms.  *See Hamm v. FCA US LLC*, Case No.: 3:17-cv-0577-AJB-BGS, 2019 WL 3891139, at *3 (S.D. Cal. Aug. 19, 2019) (in case that settled the day of trial, awarding fees to 12 attorneys at two firms for 150 hours of work); *Petropoulos v. FCA US LLC*, Case No.: 17-CV-0398 W (KSC), 2019 WL 2289399, at *2-3 (S.D. Cal. May 29, 2019) (in a case that was litigated for over two years, awarding fees for 11 attorneys at two firms).  Additionally, for better or worse, the use of a large number of attorneys in Song-Beverly Act cases appears relatively common.  *See Ortega v. BMW of N. Am.*, *LLC*, Case No. 2:18-cv-06637-R-SK, 2019 WL 6792798, at *3 (C.D. Cal. Oct. 24, 2019) (noting that defendant used 15 attorneys and that is was "not uncommon" to use a large number of attorneys in lemon law cases).  Moreover, the billing records do not show that a significant amount of time was unreasonably spent getting over a dozen attorneys up-to-speed on this case.  *See id.* ("This Court declines to admonish the use of a larger number of attorneys, as it appears there was no duplicative billing[.]").  As pointed out by Plaintiff, this case involved a not insignificant amount of discovery, motions practice, and settlement discussions (Doc. No. 56-1 at 9-11), and there is no obvious indication that a fewer number of attorneys would have generated significantly fewer hours.  Plaintiff also submits a declaration from SLP's founding partner, Payam Shahian, stating that each billing entry was contemporaneously recorded, then audited by Mr. Shahian, and in multiple cases reduced or eliminated, including the elimination of 5.5 hours of Mr. Shahian's time.  (Doc. No. 56-12 ¶¶ 50-51.)  Plaintiff also states, and BMW does not dispute, that SLP, EcoTech, and Rosenstein "routinely work on

BMW cases together" and "in the same distinct roles."[4]  (Doc. No. 56-1 at 20 n.12); *see*, *e.g.*, *Zargarian*, 442 F. Supp. 3d at 1220.  Overall, the court has no persuasive reason to doubt the honesty or judgment of Plaintiff's counsel regarding the number of attorneys reasonably required to litigate this case.  Accordingly, Plaintiff has met his burden of showing that the number of SLP attorneys who worked on this case, and the hours they worked on this case, were reasonable.  Plaintiff also seeks an additional $6,000 for replying to BMW's opposition to the instant motion and to attend a hearing on the instant motion. (Doc. No. 56-12 ¶ 52.)  Because no hearing was held, however, the $6,000 requested by Plaintiff is reduced by $2,275.  *See Hellenberg v. Ford Motor Co.*, Case No.: 18cv2202 JM (KSC), 2020 WL 1820126, at *7 (S.D. Cal. Apr. 10, 2020).

### 2.    Dana Tabesh

Plaintiff claims that Dana Tabesh, of EcoTech Law Group, worked on this case for a total of 5.5 hours at a rate of $545 per hour for a total of $24,797.50.  (Doc. No. 56-33 ¶ 10.)  Additionally, in a declaration, Mr. Tabesh states, "[i]n total, I am seeking on behalf of my firm, EcoTech Law Group, P.C., compensation for the 5.5 hours I billed to this matter, at an hourly rate of $545, for a total lodestar of $24,797.50."  *Id.*  Given that 5.5 hours at $545 totals $2,997.50, not $24,797.50, this is an obvious error.  Contrary to his declaration, Mr. Tabesh's bill shows that he billed for 46 hours of work,[5] which accurately totals $24,797.50.  (Doc. No. 56-34.)  In support of his 46 hours of work on this case, Mr. Tabesh states that he "focused on resolving discovery issues and engaging in discovery motion practice related to document production and compelling the deposition of BMW's

---

[4] Plaintiff also points out that BMW staffed this case with two different law firms.  (Doc. No. 56-1 at 20 n.12.)

[5] Because Mr. Tabesh failed to state the total number of hours he worked on his bill, and because Mr. Tabesh demonstrated a carelessness with regard to his arithmetic, the court was required to parse out and add up each entry from Mr. Tabesh's bill  in order to decipher the total number of hours he allegedly worked on this case and to determine whether the $24,797.50 he now seeks was an accurate figure based on his hourly rate.

Senior Product Engineer, Mr. Michael Murray and of BMW's Rule 30(b)(6) witness." (Doc. No. 56-33 ¶ 8.)   Mr. Tabesh also states that he "prepared various letters and submissions regarding Plaintiff's Rule 11 Sanctions Motion against BMW." (*Id.*)

Here, BMW argues generally that "[t]here is no reason why Plaintiff needed a third law firm to litigate this simple lemon law dispute." (Doc. No. 61 at 11.)  Indeed, there is nothing in the record to suggest that attorneys at SLP, all of whom charge lower rates, were incapable of performing the work Mr. Tabesh performed in the same amount of time. Regardless, Plaintiff claims that her attorneys at SLP had a legitimate reason for associating with Mr. Tabesh based on his experience litigating against BMW.  Specifically, Plaintiff states, and BMW does not dispute, that "Mr. Tabesh was associated into this case because of his experience litigating cases against BMW, particularly his experience filing successful motions to compel BMW to produce its internal documents and produce Mr. Murray's testimony." (Doc. No. 52 at 2 n.3.)  Plaintiff further states that "Mr. Tabesh has, across several cases, been working (alongside SLP and [Rosenstein]) on federal court motions against BMW, so he is familiar with BMW's strategies for avoiding its discovery obligations, he is familiar with the documents in BMW's possession, custody, and control and he is familiar with how BMW stores its information such that it can be easily retrieved." (*Id.* at 20 n.12.)  Based on the billing records, it does not appear as if the work performed by Mr. Tabesh was duplicative, or that he wasted time getting up-to-speed on the case.  Additionally, any inefficiencies resulting from his initial unfamiliarity with the case and higher rate, were likely mitigated by his specific experience litigating against BMW.  Based on the record, it was generally reasonable for the SLP attorneys to associate with Mr. Tabesh.  A review of his bill also reveals that his time spent on the case was not unreasonable or duplicative.

BMW argues that the 22.6 hours of work Mr. Tabesh purportedly devoted to filing a Rule 11 motion should be struck because the motion was frivolous and ultimately

///

///

withdrawn.[6]  (Doc. No. 61 at 11-12.)  Plaintiff argues the fees related to the Rule 11 motion should be included because "[a]t the time of filing, Plaintiff possessed a good faith, colorable argument that BMW's failure to disclose controlling Ninth Circuit authority in its motion [to compel arbitration] constituted sanctionable conduct" and because "parts of the Rule 11 motion drafted by Mr. Tabesh were ultimately incorporated into the Court's order denying the motion to compel arbitration."  (Doc. No. 63 at 4-5.)

In its order denying BMW's motion to compel arbitration, the court noted that Plaintiff had moved for sanctions against BMW under Rule 11 based on BMW's failure to cite Ninth Circuit precedent in its motion, and BMW's subsequent claim that the case was distinguishable based on the language in the arbitration clause.  *See Jurosky v. BMW of N. Am., LLC*, 441 F. Supp. 3d 963, 974 (S.D. Cal. 2020) (noting that in Plaintiff's November 5, 2019 "supplemental" request for judicial notice, Plaintiff also made representations concerning the case that were, "at best, incorrect").  Specifically, the court found that Plaintiff's counsel had apparently failed to accurately describe the arbitration clauses at issue in the case, which was the same accusation that Plaintiff made, at least in part, against BMW in his Rule 11 motion.  *Id.* at n.4.  Because the court previously found the omission by BMW that served as the basis of Plaintiff's Rule 11 motion was at least "questionable," (*id.* at 974), the court will not find, for the purpose of deciding the instant motion, that Plaintiff's motion was frivolous or unworthy of any compensation.  That Plaintiff failed to recognize that he was apparently committing the same error that he accused BMW of committing suggests that perhaps even more time, and certainly more attention, should have been devoted by Plaintiff's counsel in drafting the Rule 11 motion. In any event, had BMW simply cited clearly relevant Ninth Circuit precedent in its motion

---

[6] BMW does not dispute any specific part of Mr. Tabesh's bill except for an entry for 1.5 hours spent on "[r]eview and submit proposed edits of draft expert report to Mr. D. Calef; finalize for service to BMW."  (Doc. No. 61-3 at 8.)  BMW claims this is duplicative because SLP already billed for this task.  (*Id.*)  BMW also argues that Mr. Tabesh's hourly rate should be $400, but provides no basis for this lower rate.

to compel arbitration this whole issue, and the resulting fees, could have been avoided. Accordingly, the 22.6 hours Mr. Tabesh billed in drafting a Rule 11 motion is reasonable.

### 3.    Rosenstein

Plaintiff claims Mr. Rosenstein worked on this case for 7.7 hours at $600 per hour for a total of $4,620, and Mr. Martinez, an associate, worked on this case for 2.8 hours at $275 for a total of $770.   (Doc. No. 56-29 ¶¶ 3-4.)   Plaintiff states that his attorneys associated with Mr. Rosenstein so that he could be lead trial counsel in this case.   (Doc. No. 56 at 2 n.2.)   Like Mr. Tabesh, Plaintiff claims that Mr. Rosenstein has litigated "many cases" against BMW including trials.   (Doc. No. 56-1 at 20 n.12.)

In support of his $600 per hour rate, Mr. Rosenstein states in a declaration that he has over 25 years of litigation experience, and he has "litigated hundreds of Lemon Law matters and taken dozens of those matters to jury verdict."   (Doc. No. 56-29 ¶ 3.)   He also submits an excerpt from a 2017 "United States Consumer Law Attorney Fee Survey Report" showing that in 2015 and 2016, the 75% median attorney rate for all consumer law attorneys in California was $600.   (Doc. No. 56-31 at 48.)   Plaintiff also cites two cases in which Mr. Rosenstein's $600 rate was approved.   (Doc. No. 56-1 at 16.)   BMW argues that Mr. Rosenstein is not entitled to any fees because the case was settled five months before trial and the parties did not file any pretrial documents.   (Doc. No. 61 at 11.)   In response, Plaintiff argues that "Mr. Rosenstein's reputation, skill, and work improved Plaintiff's settlement posture before trial and gave rise to the settlement that is now before the [c]ourt." (Doc. No. 63 at 9 n.15.)

Here, it is ironic, of course, that a healthy size firm like SLP that apparently specializes in Song-Beverly Act would need so much outside help trying its own cases. However, the decision to associate with experienced outside attorneys, rather than bill for those services themselves, only adds to the apparent legitimacy of SLP's decision to do so. The court agrees that Mr. Rosenstein's rate, and that of his associate, is reasonable. Additionally, the 10.5 hours in total that both attorneys spent on the case appears reasonable given that the time related to getting up-to-speed on the case, which, though

somewhat duplicative, was still necessary.  Plaintiff filed his Complaint on July 17, 2018, but Mr. Rosenstein did not enter his appearance until December 2, 2019.  (Doc. No. 33.)  Approximately five months later, on April 20, 2020, the case settled.  (Doc. No. 50.)  Associating with trial counsel well into litigation, but well before the trial date, as Plaintiff's attorneys did here, is reasonable.  The court also has no reason to disbelieve Plaintiff that Mr. Rosenstein's expertise and his relatively minor involvement in the case helped influence settlement.  Accordingly, the 10.5 hours billed by Mr. Rosenstein and Mr. Martinez is reasonable.[7]

## C.  Multiplier

In determining whether to apply a multiplier, courts should consider: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award."  *Ketchum*, 24 Cal. 4th at 1131 (internal citation omitted).  The purpose of applying a multiplier is to "fix a fee at the fair market value for the particular action."  *Id.*  "In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services."  *Id.*; *see also Pollard*, 2020 WL 57270, at *2-3.

Plaintiff requests a multiplier of 1.35 (or $47,911.68).  (Doc. No. 56-1 at 21.)  Here, Plaintiff argues, and the court agrees, that Plaintiff's counsel achieved an excellent outcome by settling the case for $122,596.92 in compensatory damages alone, which is

---

[7] BMW also makes a cursory argument that Plaintiff engaged in improper block-billing.  (Doc. No. 61 at 10.)  The only specific examples that BMW provides, however, are that 1.) "on May 5, 2020, SLP billed 10.70 hours to 'draft fee motion,'" (*id.*), and 2.) on August 14, 2019, Mr. Sogoyan spent 9.4 hours attending an ENE in San Diego, (Doc. No. 61-1 at 10).  BMW provides no specific argument as to why either entry is unreasonable.  Thus, the court declines to find that these are improper block billed entries, or that they constitute an unreasonable amount of time.  Plaintiff's motion for attorneys' fees  is 375 pages, and BMW does not dispute that the ENE took 9.4 hours.

twice the vehicle's purchase price. (*Id.* at 21-22.)  Plaintiff further argues that his counsel's skill was displayed not only by the settlement, but the favorable result achieved in defending against BMW's motion to compel arbitration. (*Id.* at 22.)  This is somewhat persuasive given the settlement amount, but is only minimally so because Plaintiff identifies no specific skill that was applied to reach that result.  Plaintiff's attorneys' expertise in handling this particular type of case is already accounted for in the approval of their relatively high hourly rates.  Also, Plaintiff's counsel's skill in handling BMW's motion does not support the application of a multiplier. *See Jurosky*, 441 F. Supp. 3d at 974 (noting that Plaintiff's counsel made representations about a controlling case that were "at best, incorrect").

Plaintiff also argues that a multiplier is appropriate based on the fact that his counsel took the case on a contingency basis and has suffered a delay in payment. (Doc. No. 56-1 at 23-24.)  Plaintiff cites no applicable caselaw supporting the application of a multiplier based on the delay in payment incurred as a result of his own attorneys' choice to take a case on a contingency basis. *See Arias*, 2020 WL 1940843, at *5 ("Given that [p]laintiff's counsel regularly undertakes this type of work, the [c]ourt does not find that [p]laintiff reasonably faced an uncertainty of prevailing on the merits.").  Plaintiff also points to nothing in the record suggesting that his attorneys acted reasonably in attempting to settle the case sooner, or that BMW's attorneys did not.

Finally, Plaintiff argues that this case was not "simple" because it involved "numerous obstacles to resolution, including filing motions to transfer venue, to compel arbitration in state court, to compel arbitration in federal court, and for judgment on the pleadings, and a notice of removal." (Doc. No. 63 at 11.)  While perhaps not simple, Plaintiff does not dispute that these types of cases, and BMW's defense tactics, are not novel or difficult.  As pointed out by BMW, this is one of at least 24 other cases SLP attorneys have filed against BMW involving the same alleged engine defect. (Doc. No. 61 at 14.)  Recent cases decided by this court have all declined to apply a multiplier based on a lack of novelty. *See Arias*, 2020 WL 1940843, at *5 ("The Court does not find any issues

that were particularly novel or complex nor any special skill employed.   The parties exchanged discovery, Plaintiff's counsel took depositions, and the parties settled the case before proceeding to trial.   Furthermore, Plaintiff did not forgo any other employment for this case and in fact seems to engage in dozens of lemon law matters at once."); *Chavez*, 2020 WL 376209, at *3 (rejecting a 0.3 multiplier based on the posture and lack of complexity of the case); *Hamm*, 2019 WL 3891139, at *4 (rejecting a 0.5 multiplier because the case did not involve complexity or novel or difficult questions of law or fact); *Petropoulos*, 2019 WL 2289399, at *4 ("Plaintiffs were not litigating important constitutional rights here.   Nor were they representing the public interest. . . . They were seeking compensation and statutory penalties for a defective Durango.").   Accordingly, no multiplier to the lodestar amount is warranted in this case.

### D.   Costs

Plaintiff filed a request with the Clerk of the Court for costs in the amount of $7,914.20, consisting of $3,790.26 for costs incurred prior to removal, and $4,123.94 for costs incurred after removal.   (Doc. Nos. 53, 54.)   After holding a hearing, the Clerk awarded costs in the amount of $3,938.36.   (Doc. No. 62 at 6.)   Both parties filed motions challenging the Clerk's decision.   (Doc. Nos. 65, 66.)

#### 1.   State Court Costs

##### a.   Court Fees

The Clerk granted Plaintiff's request for $1,070 in state court fees.   (Doc. No. 62 at 2-3.)   The fees included a $435 fee to file the Complaint in Sacramento County Superior Court, a $50 transfer fee when the case was transferred to San Diego, and a $435 filing fee and a $150 jury fee to the San Diego County Superior Court.   (*Id.* at 3.)   The Clerk reasoned that Local Rule 54.1.b.10 requires the recovery of costs incurred in state court prior to removal "to the extent they are covered in this rule or otherwise permitted by state law." (*Id.*)   The Clerk further reasoned that section 1794(d) of the Song-Beverly Act allows for the recovery of costs and expenses that are "reasonably incurred by the buyer in connection with the commencement and prosecution of such action."   CAL. CIV. CODE §1794(d).

BMW objects to the $435 filing fee in Sacramento County and the $50 transfer fee because "Plaintiff improperly filed his initial complaint in Sacramento Superior Court" and "BMW NA should not now be required to reimburse Plaintiff for the costs he incurred as a result of his own filing error."  (Doc. No. 66 at 4.)  Other than failing to prevail on the motion, however, there is no indication that filing the Complaint in Sacramento was unreasonable, or that Plaintiff's attorneys did not actually or reasonably incur costs related to defending the motion.  Accordingly, an award of $1,070 in state court fees is reasonable.

### b.      Service of Process

The Clerk granted Plaintiff's request for $161.50 for service of the summons and complaint on BMW and the dealership.  (Doc. No. 62 at 3.)  The Clerk reasoned that Local Rule 54.1.b.1 allows for the taxation of fees for service of process including costs "for service of summonses."  (*Id*.)  The Clerk also reasoned that Local Rule 54.1.b.10 requires the recovery of costs incurred in state court prior to removal "to the extent they are covered in this rule or otherwise permitted by state law."  (*Id*.)  BMW does not object to this cost. The court finds $161.50 in service of process costs to be reasonable.

### c.      Other Costs Prior to Removal

The Clerk granted Plaintiff's requests for other costs that were incurred prior to removal in the amount of $2,472.76.  (*Id*. at 3-4.)  This includes costs for filing documents in state court, service of documents upon opposing counsel, court calls to attend state court telephonic hearings, court reporting and a reporter's transcript, and the purchase of a copy of an order from the San Diego County Superior Court.  (*Id*. at 4.)  The Clerk reasoned that even if most, if not all, of these costs would not be grantable by the Clerk if they had been incurred during proceedings in this court, under Local Rule 54.1.b.10, they are recoverable to the extent they are permitted by section 1794(d) of the Song-Berverly Act.  (*Id*.)  The Clerk declined, however, to award $86 for a court call charge because the Plaintiff did not submit an invoice and Plaintiff's counsel admitted at the hearing that it could not be located. (*Id*.)  Plaintiff does not object to the $86 deduction.  BMW does object, however, to the award of $357.27 for a court reporter, filing, and court call fees associated with serving

Plaintiff's unsuccessful opposition to the motion to transfer.  (Doc. No. 66 at 3-4.)  For the same reasons discussed above, the court will not find, for the purpose of deciding the instant motion, that Plaintiff's counsel's work towards filing the Complaint in Sacramento, and opposing BMW's motion to transfer, was unworthy of compensation.  The court finds the $2,472.76 in other pre-removal costs to be reasonable.

### 2.     Costs After Removal

#### a.     Courtesy Copies

The Clerk granted Plaintiff's request for costs related to producing courtesy copies for the court in the amount of $234.10.  (Doc. No. 62 at 4-5.)  This included copying costs related to providing the court with copies of Plaintiff's opposition ($37.00), supplemental request for judicial notice ($46.90), Rule 11 notice ($55.15), and statement on a discovery dispute ($95.05).  (*Id.* at 5.)  The Clerk reasoned that under Civil Local Rule 54.1.b.6.a.1, copies obtained for use in the case are taxable if the copies were provided to the court by court order or rule.  Section 2(e) of the Southern District of California's Electronic Case Filing Administrative Policies and Procedures Manual provides that "parties must deliver to the Clerk's Office or mail directly to the judge's chambers, within 24 hours after filing, any criminal or civil case filing which exceeds 20 pages in length including attachments and exhibits."  The Clerk declined to grant $28.75 in copying costs related to a three-page Notice of Appearance.  (*Id.*)  BMW objects to $183.40 in costs associated with Plaintiff's withdrawn Rule 11 motion because, as stated by the court, "Plaintiff also made representations concerning [a controlling case] that were, at best, incorrect."  (Doc. No. 62.)  For the same reasons discussed above, the court will not find, for the purpose of deciding the instant motion, that Plaintiff's Rule 11 motion was frivolous or unworthy of compensation.  The court finds that $234.10 in courtesy copy costs is reasonable.

#### b.     Other Costs

The Clerk denied Plaintiff's request for $3,861.09 in other costs incurred after the removal of the action to this court.  This includes $231.26 for travel to San Diego to attend this court's proceedings, $463.37 for service of documents upon opposing counsel, and

$3,166.46 in expert witness fees.  (Doc. No. 62 at 5-6.)  The Clerk also noted that although it was possible that these expenses are recoverable under the Song-Beverly Act, under Local Rule 54.1.b.10, they are not reimbursable because they were incurred after removal. (*Id.*)

As noted above, the Song-Beverly Act allows for the recovery of "a sum equal to the aggregate amount of costs and expenses."  CAL. CIV. CODE § 1794(d).  Under Federal Rule of Civil Procedure 54(d), however, costs available to the prevailing party are limited to those listed in 28 U.S.C. § 1920.  *See also Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987) ("[Section] 1920 defines the term 'costs' as used in Rule 54(d).  Section 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d).").  District courts have reached different conclusions as to whether the costs and expenses provision in the Song-Beverly Act is procedural or substantive.  *See Johnson*, 2019 WL 3891148, at *4 ("In general, an award of costs in federal district court is governed by Federal Rule of Civil Procedure 54(d) and not applicable state law, even in diversity cases."); *but see Base*, 2020 WL 363006, at *7 (finding that "state law governs Plaintiff's request for costs," but listing several cases in the Eastern District of California finding otherwise); *Petropoulos*, 2019 WL 2289399, at *4 ("As this is a diversity action over which the Court has jurisdiction pursuant to 28 U.S.C. § 1332, California substantive law governs the award of costs."); *Forouzan v. BMW of N. Am., LLC*, 390 F. Supp. 3d 1184, 1187 (C.D. Cal. 2019) (finding the cost provision to be substantive based on the state legislature's intent); *O'Brien v. FCA US LLC*, No. 17cv4042 JCS, 2019 WL 5295066, at *7 (N.D. Cal. Oct. 18, 2019) (same).

### i.    Travel Costs

The Clerk denied Plaintiff's request for $231.26 in travel costs because no invoices or receipts were submitted, and even if they were, Local Rule 54.1 provides no authority for the Clerk to grant these costs.  (Doc. No. 62 at 5-6.)  The court agrees with Plaintiff that costs and expenses related to travel are not necessarily limited by Rule 54(d) or by Local Rule 54.1.  The costs and expenses provision in the Song-Beverly Act is substantive for

the same reasons as the courts found persuasive in *Base*, *Petropoulos*, *Forouzan*, and *O'Brien*. Moreover, federal courts consistently award travel expenses to prevailing plaintiffs in Song-Beverly Act cases. *See*, *e.g.*, *Aviles v. Subaru of Am., Inc.*, No. 1:18-cv-01544-DAD-SKO, 2020 WL 868842, at *4 (E.D. Cal. Feb. 21, 2020); *Holcomb*, 2020 WL 759285, at *8; *Rueda v. FCA US LLC*, No. 1:17-cv-00968-DAD-JLT, 2020 WL 469333, at *8 (E.D. Cal. Jan. 29, 2020). According to SLP's bill, Mr. Sogoyan incurred $231.26 in travel costs to attend an ENE ($181.35 in mileage, $30 for parking, and $19.91 for meals). (Doc. No. 56-18 at 13.) Plaintiff does not dispute the Clerk's finding that no invoices or receipts were submitted for his travel expenses. Plaintiff submitted a declaration, however, stating that "Mr. Sogoyan spent $231.26 in mileage, parking and meals to attend the Early Neutral Evaluation in this case." (Doc. No. 65-4 ¶ 19.) This is sufficient to find that $231.26 in travel costs were reasonably incurred.

### ii.   Service of Documents

The Clerk denied Plaintiff's request for $463.37 in costs related to serving documents on BMW because Local Rule 54.1 provides no authority for the Clerk to do so. (Doc. No. 62 at 5-6.) Plaintiff argues that this cost should be recouped because the court is not limited by Rule 54(d) and Local Rule 54.1. (Doc. No. 65-1 at 4.) BMW does not specifically object. As discussed above, the court agrees that it is not limited by Rule 54(d) and Local Rule 54.1. The court also finds that $463.37 in costs related to serving documents is reasonable.

### iii.   Expert Witnesses

The Clerk denied Plaintiff's request for $3,166.46 in expert witness fees because there is no indication that fees are from a "court-appointed" expert, and there is also no authority for the Clerk to grant costs for the expert witness fees under Local Rule 54.1.b.5. (Doc. No. 62 at 5-6.) Plaintiff argues that this expert witness fee was reasonably incurred because "BMW denied all liability in this matter, and this report was necessary for Plaintiff to prove up his case (including establishing that there was a defect that substantially impaired use, value or safety that BMW was unable to repair within a reasonable number

of repair opportunities)." (Doc. No. 65-1 at 15.)  In its motion objecting to the Clerk's order taxing costs, BMW stated that it anticipated that Plaintiff would seek to recover the $3,166.46 in costs he incurred in connection with the expert report of Dan Calef, and BMW reserved its right "to file a cross-motion to retax to address this particular issue," (*id.*) but BMW never did so.  (Doc. No. 66 at 4.)  As pointed out by plaintiffs, multiple federal courts have allowed a prevailing plaintiff to recoup expert witness fees. *See*, *e.g.*, *Gordillo v. Ford Motor Co.*, No. 1:11-cv-01786 MJS, 2014 WL 2801243, at *8 (E.D. Cal. June 19, 2014).  The court finds that $3,166.46 in expert witness fees were reasonably incurred.

## IV.   CONCLUSION

Based on the forgoing, the court awards: 1.) $106,703 in attorneys' fees for the attorneys at SLP; 2.) $5,390 for the attorneys at Rosenstein; 3.) $24,797.50 for attorney Tabesh; 4.) $1,070 in pre-removal state court fees; 5.) $161.50 in pre-removal service of process costs; 6.) $2,472.76 in other pre-removal costs; 7.) $234.10 in courtesy copy costs; 8.) $231.26 in travel costs; 9.) $463.37 in costs related to serving documents post-removal; 10.) $3,166.46 in expert witness fees; and 11.) $3,725 for Plaintiff's counsel to reply to Defendant's opposition to the instant motion.  The court declines to award a 1.35 multiplier in the amount of $47,911.68, or any other multiplier or additional amount.  The court therefore **GRANTS IN PART** Plaintiff's motion for attorneys' fees, and Plaintiff's motion to retax costs, in the amount of ***$148,414.95***.  To the extent the parties ask the court to take judicial notice of various documents, mostly consisting of state court orders, those requests are **DENIED AS MOOT**.

IT IS SO ORDERED.

DATED: August 25, 2020

For JEFFREY T. MILLER
United States District Judge